### HUDSON *v.* HUDSON.

1. INSURANCE—DESIGNATION OF BENEFICIARY—DESCRIPTION.

   The designation of a beneficiary in a life insurance policy by name is sufficient to entitle such person to the death benefit, the addition of the word "wife" being descriptive only and not controlling.

2. ESTATES OF DECEDENTS—ANNULMENT OF MARRIAGE—FRAUD.

   Assets of estate of deceased which defendant had obtained by representing that she was the decedent's wife would be required to be returned, where circuit judge apparently found that she knew of decree of annulment that decedent had obtained some 4 months before he was killed.

3. TRUSTS—CONSTRUCTIVE FRAUD.

   The fraud committed in other transactions does not warrant the application of the doctrine of constructive trusts to an entirely different transaction.

4. EVIDENCE—DEFAULT.

   A default in another suit, leading to judgment on default, would make admissible in evidence against the then defaulting party in a subsequent case the essential allegations of claim on which the default was entered.

5. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

   The purpose of the statute barring testimony of an opposite party as to matters equally within knowledge of deceased is to keep

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29A Am Jur, Insurance § 1660.
   Divorce of insured and beneficiary as affecting the latter's right in life insurance. 175 ALR 1220.
[2] 21 Am Jur, Executors and Administrators §§ 321, 322.
[4] 30A Am Jur, Judgments §§ 222, 223.
[5] 58 Am Jur, Witnesses § 215.
[6] 58 Am Jur, Witnesses § 355 *et seq.*

the living from lying about the dead when the dead are no longer present to answer but when it has the effect of allowing the dead to speak accusing words from the grave then the living are not prohibited from answering (CL 1948, § 617.65).

6. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—WAIVER.

Any objection based on the dead-man's statute to defendant's testimony as to the insurance beneficiary designation, the reasons for same and the relations with deceased out of which it came, was waived by the introduction of the annulment decree and bill of complaint in action by administratrix of decedent's estate against defendant, the named beneficiary whose marriage to decedent had been annulled because of fraud (CL 1948, § 617.65).

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted January 4, 1961. (Docket No. 28, Calendar No. 48,289.) Decided April 26, 1961.

Bill by Mildred M. Hudson, administratrix of the estate of Francis E. Hudson, deceased, against Thetis Hudson for accounting and to impress trust on life insurance benefits. Decree for plaintiff. Defendant appeals. Reversed and remanded for further proceedings.

*Melba A. Kopel* and *David M. Brewster,* for plaintiff.

*Paul H. Rieker* (*Arthur C. Lumley,* of counsel), for defendant.

EDWARDS, J. This is a chancery action brought by the administratrix of the estate of deceased Francis E. Hudson against defendant to recover certain moneys which are claimed to be assets of the estate. Plaintiff alleges defendant came into possession of them by means of fraud. Plaintiff, administratrix, is the divorced wife of Francis E. Hudson and the mother of 2 children who are his

sole heirs.   Defendant is also a former wife of
Francis E. Hudson whose marriage to him had been
annulled on grounds of fraud in an uncontested
action 4 months before his death.

The circuit judge, relying largely on the annul-
ment decree and its confession of fraud, found for
plaintiff and awarded to her as administratrix all
of the assets claimed, including the proceeds of an
insurance policy.   On appeal, defendant-appellant
disputes the validity of the decree only as to this
last asset.

Most of the facts are undisputed.   Plaintiff Mil-
dred M. Hudson was married to Francis E. Hudson,
deceased.   She secured a divorce from deceased on
May 1, 1951.   Two children were born to plaintiff
as a result of said marriage, and they are the only
heirs of the deceased.   Francis E. Hudson married
appellant September 17, 1956.   For many years
deceased was an employee of the Radio Corporation
of America in its Detroit plant.   He, along with
other employees, was the recipient of a group policy
of life insurance which in event of death provided
for the payment of $8,000 and supplemental benefit
of $250 to the beneficiary named by deceased.   Orig-
inally, plaintiff Mildred M. Hudson was the named
beneficiary.   On March 1, 1956, deceased changed the
beneficiary to "Thetis M. Schafer, future wife."   On
September 25, 1956, deceased executed another
change of beneficiary form to read "Thetis Hudson,
wife."   On May 28, 1957, the deceased secured an
uncontested decree of annulment of his marriage to
the appellant on grounds of fraud.   Four months
later Hudson was killed in an automobile accident
on September 27, 1957.   No further change of benefi-
ciary had been made by said deceased on his RCA
group policy up to the time of his death.

Upon the death of Francis E. Hudson, the appel-
lant presented the insurance certificate to the Radio

Corporation of America and after a short time received a check for $8,000 made payable to Thetis M. Hudson, together with the supplemental benefit in the sum of $250. Appellant also received the last salary check of deceased in the sum of $185.23, as widow of deceased. Appellant went to the Detroit Bank and was paid as widow the sum of $10 representing balance due on a bank account in name of deceased. Appellant also received the sum of $136.12 from the Radio Corporation of America representing a retirement fund. Appellant applied for and received from the United States civil retirement fund the sum of $686.79 as widow of deceased.

Appellant paid the funeral bill of deceased in the sum of $1,040 and other charges incident thereto. She purchased a grave marker for $141.11. Appellant also paid to the National Loan Company the balance of a loan owed by deceased in the sum of $100.20. She also paid to Sears & Roebuck a charge account in name of deceased in the sum of $276.02.

After the payment of the various charges referred to, plus some expenditures for her own purposes, appellant still had the sum of $4,815 left from the sums of money she had collected, which sum of money was paid into court pursuant to an order providing it be held by the Wayne county clerk "pending final disposition of the matter."

She also returned to the United States civil retirement fund the $686.79 which she had drawn.

At the hearing, the principal dispute of fact was as to whether or not appellant Thetis Hudson knew of the annulment decree when she drew various sums as Francis E. Hudson's widow.

The circuit judge obviously resolved this question against appellant. He also admitted certain portions of the annulment proceedings into evidence in the instant case. Since the decree therein referred to the "material allegations" of the bill of complaint

as "true," the circuit judge took the allegations of the bill of complaint in the annulment case as substantive proof of fraud in this case. Relying on the dead-man's statute,* the circuit judge refused to allow appellant to present testimony to counter those allegations.

His opinion said in part:

"There is a cardinal principle of equity that equity abhors a fraud, and fraud vitiates everything it touches, and the undisputed facts in this case are that the deceased married the defendant, and, according to his bill of complaint, he married her in good faith, expecting the defendant to consummate said marriage, but said defendant did not intend to live with plaintiff† and bear children and did leave plaintiff immediately after said marriage ceremony, and did marry plaintiff solely for the fraudulent purpose of obtaining his name and the security afforded thereby, with the full intent of not consummating it, which she made known and steadfastly maintained ever since.   *   *   *

"It would be highly inequitable and unconscionable and deviation from all equitable principles to permit the defendant in this case to benefit from that fraudulent marriage, and it is clear, if she retained any of the moneys which she has she would be benefiting from the fraudulent marriage."

And the circuit judge included the proceeds of the deceased's insurance policy among those assets which he ordered defendant to turn over to plaintiff administratrix.

This result, of course, has the merit of assigning the major asset of deceased's estate (as far as this record discloses) to the benefit of his children. It is not, however, up to the courts to determine whether a deceased person's disposition of his prop-

---

* CL 1948, § 617.65 (Stat Ann § 27.914).—REPORTER.

† The circuit judge's reference was to plaintiff in the annulment suit, the deceased Francis E. Hudson.

erty is wise or unwise. Our question is simply, was the beneficiary accurately identified, and was the designation the free and voluntary act of a competent person. *Metropolitan Life Ins. Co.* v. *Gray,* 290 Mich 219.

The legal problem posed is not easy. Appellee concedes that there is no confusion as to appellant being the beneficiary named by the deceased:

"The fact that the defendant was the named beneficiary of the insurance policy and supplemental benefits has never been denied by the plaintiff."

Appellee also concedes that there is much Michigan law to the effect that where the beneficiary is identified, the word "wife" is descriptive only and not controlling. *Howard* v. *Chrysler Corporation,* 275 Mich 706; *Aetna Life Insurance Co.* v. *Sower,* 273 Mich 423; *Chrysler Corporation* v. *Hardwick,* 299 Mich 696.

There are no allegations concerning incompetence of deceased.

Appellee contends that even with these propositions established, the circuit judge's decree was justified as to the insurance proceeds because of proofs and findings of fraud and the equitable doctrine of constructive trusts.

That appellant was guilty of fraud in some of the transactions subsequent to Francis E. Hudson's death admits of little doubt. On this record, the circuit judge could have found, and apparently did find, her denials of knowledge of the annulment decree to be unconvincing. Thus, if required to do so, we would have no difficulty in affirming those provisions of the decree requiring appellant to return those assets which she received on the basis of the representation that she was Francis E. Hudson's wife.

The insurance benefits, however, were received on an entirely different basis—namely, that appellant was the named beneficiary. The fraud committed in the other transactions does not warrant the application of the doctrine of constructive trusts to an entirely different transaction. *Lappo* v. *Negus,* 362 Mich 242.

The question still remains as to whether or not there was actual fraud committed by defendant in relation to the insurance proceeds.

Any implication of actual fraud rests, as we see it, on testimony concerning the designation of defendant as insurance beneficiary, rather than on any testimony in this record concerning her actions in drawing the benefits. As to this question, some additional facts—also undisputed—need to be added.

These indicate that on March 1, 1956, deceased executed a change of beneficiary form, listing "Thetis M. Schafer, future wife" as beneficiary. The marriage occurred September 17, 1956. Subsequent thereto, on September 25, 1956, deceased executed another change of beneficiary form, listing "Thetis Hudson, wife" as the beneficiary. No subsequent change was ever executed, although the annulment decree followed on May 28, 1957, and deceased lived 4 months thereafter until killed in an automobile accident on September 27, 1957.

The bill of complaint for annulment which the circuit judge accepted as proof of defendant's fraud alleged that defendant entered her marriage with deceased with no intention of consummating the marriage, of living with him or having children by him, but solely for the fraudulent purpose of acquiring his name and financial security. As noted above, an annulment decree was entered by default with the decree referring to the allegations of the bill of complaint as true.

Both the decree and the bill of complaint to which it referred were admitted in evidence.

In this ruling, we believe the circuit judge was correct. 4 Wigmore on Evidence (3d ed), § 1066, p 60, says:

"(6) A *default* in another suit, leading to *judgment on default*, would make admissible against the then defaulting party in a subsequent case the essential allegations of claim on which the default was entered. But that is because the failure to deny may amount to an admission by silence, on the principle of § 1072, *post.*"

See, also, *Bonazzi* v. *Fortney*, 94 Vt 263 (110 A 439); *Thiel* v. *Southern Pacific Co.* (CCA 9), 149 F2d 783.

We do not read the *Mead Case* (*Mead* v. *Randall*, 111 Mich 268, relied on by appellant) as inconsistent with this ruling. The bill of complaint sought to be introduced in the *Mead Case* was a pleading in a case in which the objector was not a party. In the instant case, defendant was also the defendant in the annulment proceeding and it was her default which occasioned the decree in which the bill of complaint was incorporated by reference.

With the annulment decree and the allegations of the bill of complaint therein referred to before us, however, we have something less than uncontestable proof of fraud as to the RCA insurance. In this regard, it is appellee's position (and to some degree the circuit judge's opinion supports it) that accepting the allegation of the bill of complaint to the effect that defendant married deceased solely for his money, an implication is raised that the fraud which produced the marriage also produced the designation of defendant as insurance beneficiary. The least that must be said about this contention is that it is certainly not beyond rebuttal. And defendant was stopped from attempting to rebut it.

When defendant was asked about the nature of the relationship between herself and the decedent, the circuit judge ruled she could not answer since the information was equally within the knowledge of the deceased.

This is certainly true. But the dead-man's statute cannot be read as having this effect. The purpose of the dead-man's statute is to keep the living from lying about the dead when the dead are no longer present to answer. If it had the effect of allowing the dead to speak accusing words from the grave while the living are prohibited from answering, it could work just as much injustice in reverse fashion as it was designed to cure.

This is recognized in the 3d proviso of the statute itself:

"Provided further, That whenever the deposition, affidavit or testimony of such party taken in his lifetime or when mentally sound shall be read in evidence in such suit or proceeding, the affidavit or testimony of the other party shall be admitted in his own behalf on all matters mentioned or covered in such deposition, affidavit or testimony." CL 1948, § 617.65 (Stat Ann § 27.914).

Thus, when testimony on a particular subject originating with a deceased party is introduced, the person doing so waives benefit of the statute and cannot object to any testimony on the same subject simply because it is equally within knowledge of the deceased. *Fox* v. *Barrett's Estate,* 117 Mich 162; *Cady* v. *Burgess,* 144 Mich 523.

Any objection based on the dead-man's statute to defendant's testimony as to the insurance beneficiary designation, the reasons for same and the relations with deceased out of which it came, was waived by the introduction of the annulment decree and bill of complaint. The exclusion was error, and for all we know may well have affected the result.

Reversed, decree vacated, and remanded for further proceedings not inconsistent with this opinion. Costs to appellant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.