**Ethel M. WARDA, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 92–2344.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1993.

Decided Jan. 26, 1994.

---

imposition of a constructive trust. We therefore affirm.

## I.

### A.

Mrs. Warda's father, William Matthews, owned several parcels of Michigan land at his death in 1953. He had written two wills and a later codicil disposing of this property. The first will devised his land to Mrs. Warda; the second will revoked the earlier one and left the property instead to Mrs. Warda's son, Henry, the grandson of Mr. Matthews. Both wills also provided, in substantially identical terms, for monthly payments of support and medical assistance to Mr. Matthews' surviving wife. Some two years after he made his second will, Mr. Matthews executed a codicil which referred to and amended certain administrative provisions of the first will. The codicil did not expressly revoke, or even refer to, the second will. This ambiguity led to a will contest in 1953.

Mrs. Warda insisted during that litigation that her father's codicil impliedly revoked the second will and revived the first. Henry Warda, nineteen years old and represented by his father, who was the boy's legal guardian, responded that the second will should govern Mr. Matthews' estate. The Michigan courts had taken no clear position on that legal issue prior to 1953, and the question indeed remains unresolved to this day. (*See In re Estate of Matthews*, No. 17664, Berrien County, Mich.P.Ct.1992.) More significant than the content of the parties' arguments, however, was the fact that Mrs. Warda and her son, though they had potentially conflicting interests in the litigation, were both represented by the same attorney. This conflict of interest, Mrs. Warda now argues, was a constructive fraud committed by Mrs. Warda against her son, one that tainted the entire probate proceedings.

The attorney for Mrs. Warda and Henry persuaded them to settle their differences through an agreement which would provide a lump-sum payment to Mr. Matthews' widow

Peter J. Johnson (briefed), Jay L. Schultz (argued and briefed), St. Joseph, MI, for petitioner-appellant.

Gary R. Allen, Acting Chief (briefed), David English Carmack, Christine Grant (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for respondent-appellee.

Before: NELSON and NORRIS, Circuit Judges; and HEYBURN, District Judge.[*]

JOHN G. HEYBURN II, District Judge.

Petitioner Ethel Warda appeals the tax court's determination that certain conveyances of land from Mrs. Warda to her son were taxable gifts. This Court is faced with two Michigan probate court decisions, one from 1953 and another from 1992, each of which, if followed here, would produce completely different results. The 1953 probate ruling declared that Mrs. Warda held title to the property the Commissioner now wishes to tax; the 1992 ruling declared that Mrs. Warda had not held title to the land in question but held the property in constructive trust for the benefit of her son. We must determine whether the doctrines of res judicata or collateral estoppel grant conclusive effect to either probate decision and, if not, whether Mrs. Warda is nevertheless entitled to rely upon the 1992 probate ruling, which would bar the Commissioner from collecting the desired gift tax.

Although we approach this complex case differently than did the tax court, we agree with the tax court's result. Neither Michigan probate decision binds this Court under the circumstances. We hold instead, however, that Mrs. Warda is judicially estopped from disputing the result of the 1953 probate litigation, and we further hold that an independent review of the original probate proceedings does not support the retroactive

[*] The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

in lieu of lifetime support and then convey the rest of the estate to Mrs. Warda. Henry Warda's father petitioned the probate court to accept this settlement, suggesting that further litigation "would cause great expense and dissipate the assets [of the estate] and would be wholly unwarranted and unjust." That petition informed the court that "it is for the best interests of said estate and for the best interests of said minor [Henry Warda] that said settlement be made . . . ." The probate court adopted this view and authorized Henry Warda's father to enter the proposed settlement on Henry's behalf.

As the years passed, Mrs. Warda transferred virtually all of her father's land to Henry. Federal tax officials took note of these conveyances during an audit of Henry's finances. Henry Warda first contended that he had purchased these properties from his mother. Mrs. Warda substantiated her son's view of the transfers by sending a notarized letter to a revenue agent asserting that she had conveyed the parcels to Henry Warda as consideration for his work on the family farm. On advice of counsel, however, Henry later recharacterized the transactions as gifts rather than sales. Mrs. Warda reversed herself, too, executing a series of affidavits in which she swore that the land transfers represented gifts to her son. When the government insisted that Mrs. Warda pay gift taxes on these transactions, however, Mrs. Warda again shifted ground, arguing that the transfers to Henry were either distributions from a constructive trust or ordinary sales.

The tax court rejected Mrs. Warda's constructive trust theory, summarizing its view in the following terms:

[Mrs. Warda's] argument is based on the premise that her acquisition of the properties resulted from an erroneous decision of the Michigan probate court, i.e., petitioner should not have been granted a fee simple interest in the properties. We address petitioner's argument simply by stating that we defer to the Michigan probate court's [1953] order. The terms of the order speak for themselves: petitioner received a fee simple interest in the properties she inherited from her father.

The tax court accordingly determined that the land transfers were gifts from Mrs. Warda to her son, and were properly taxable as such. This appeal followed. 26 U.S.C. § 7482(a)(1).

### B.

To complicate matters, Mrs. Warda began a parallel lawsuit in a Michigan probate court in October, 1990, even as her challenge was pending in the tax court. Mrs. Warda asked the Michigan court to declare that she had defrauded her son in the 1953 probate proceedings, and she petitioned the court to impose a constructive trust retroactively on all property she had taken under the original settlement.

This litigation attracted the attention of the district counsel for the Internal Revenue Service. That official, in a letter, informed the probate court that a similar action was pending before the tax court; the official also forwarded several documents related to the federal litigation. The Commissioner did not otherwise participate in this Michigan probate litigation.

Mrs. Warda's most recent probate litigation ended successfully. In a decision rendered in 1992 after the tax court entered its ruling, the Michigan probate court declared that Mrs. Warda had defrauded her son of his rightful inheritance, and the court imposed a constructive trust stripping her of title to all property she had taken under the 1953 settlement.[1] The court stopped short of holding, as a matter of law, that Mr. Matthews' second will—the one conveying his estate to Henry Warda—was indeed the valid and enforceable will. The court observed, though, that Henry Warda's legal claim under the second will was at least not "insub-

---

1. The probate court noted a series of "outrages" perpetrated against Henry Warda: the boy's father, though he acted as Henry's legal guardian, possessed contradictory personal interests arising from his marriage to Mrs. Warda; Henry Warda's attorney simultaneously represented Mrs. Warda, the boy's principal opponent in the 1953 litigation, and therefore suffered an even graver conflict of interest; and the 1953 probate court failed in its duty to protect a minor like Henry Warda from his mother's wrongdoing.

stantial", despite the complicating presence of Mr. Matthews' later codicil.[2]

Mrs. Warda contends that the fraud she perpetrated against her son in 1953 prevents the tax court from basing its decision on the result of those tainted proceedings. She argues specifically that the doctrines of res judicata and collateral estoppel do not assign preclusive effect to the 1953 probate decree. By her view, though, the same preclusion doctrines do require this Court to defer to the result of the 1990 probate litigation. Even if we are not bound by those recent proceedings and must conduct an independent review of the 1953 litigation, Mrs. Warda continues, the later probate court's sound reasoning should lead us to an identical conclusion.

## II.

 Whether a taxpayer holds an interest in property, and the nature of that interest, is determined by reference to state law. *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Mrs. Warda's title to the property she transferred to her son traces back to the 1953 probate court decree. Where, as here, the judgment of a state probate court bears on a taxpayer's rights in property, that judgment is entitled to the same deference in federal court as it would receive under the law of that state. U.S. Const., art. IV, § 1 (Full Faith and Credit Clause); 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 80–81, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984). We accordingly must determine whether, under Michigan law, the principles of *res judicata* make the 1953 order of the probate court conclusive with respect to Mrs. Warda's title. We conclude that the 1953 ruling is not entitled to such binding effect.

 The doctrine of res judicata, now more commonly called claim preclusion, assures that an original cause of action is extin-

guished by a judgment, regardless of the particular issues raised and litigated in the action. *Howell v. Vito's Trucking & Excavating Co.,* 386 Mich. 37, 191 N.W.2d 313, 315 (1971). Under Michigan law, then, a plaintiff cannot maintain a subsequent lawsuit against a defendant based upon the same cause of action determined by the original judgment. *Id.* The cause of action between the parties to the present lawsuit—Mrs. Warda's purported liability for the payment of gift taxes—is not the same cause of action determined by the litigation before the Michigan probate court in 1953. Nor is the cause of action contested here identical to the claim decided by the probate litigation begun by Mrs. Warda in 1992. Thus the 1953 probate order does not bar Mrs. Warda from disputing her tax liability today; nor could the result of the more recent probate litigation preclude the Commissioner from seeking to impose the desired gift tax.

 The doctrine of collateral estoppel, now better known as issue preclusion, holds that a judgment is "conclusive between the parties ... as to questions actually litigated and determined by the judgment." *Howell,* 191 N.W.2d at 315. Mrs. Warda's rightful claim to certain parcels of land was clearly at issue in both the 1953 and 1992 probate court proceedings; the same issue also figures largely in the tax court's judgment currently under review. Under appropriate circumstances, then, the 1953 probate decree might preclude Mrs. Warda from relitigating the issue of whether she held title to the land she transferred to her son; by the same token, the judgment of the 1992 probate court stripping Mrs. Warda of her title might, where appropriate, bar the Commissioner from contending that Mrs. Warda owned the land at issue.

 Neither result is appropriate in this litigation, however, due to the Michigan rule of mutuality. Where a party attempts offensive use of a previously litigated issue, Michi-

---

**2.** It is highly ironic that the 1990–1992 proceedings, which Mrs. Warda brought to redress conflicts of interest occurring in the original probate, were themselves marred by an apparent conflict of interest. The same attorney represented both Mrs. Warda and her son in the 1990 action, even though by all appearances they were

opposing parties in that litigation. This irony gives rise to the broader concerns about the 1990–1992 proceedings in which the record suggests that no adverse litigant participated in that lawsuit, no hearings took place, and no evidence or argument was offered in support of the original probate proceedings.

gan law will give preclusive effect to the prior determination only between those who were parties or their privies to the previous suit. *Howell,* 191 N.W.2d at 318; *Knoblauch v. Kenyon,* 163 Mich.App. 712, 415 N.W.2d 286, 290 (1987). Collateral estoppel is inapplicable. *Id.,* 191 N.W.2d at 317; *Lichon v. American Universal Ins. Co.,* 435 Mich. 408, 459 N.W.2d 288, 298 (1990). In the case before us, each party seeks to use a Michigan probate ruling as an offensive weapon against the other. *Lichon,* 459 N.W.2d at 297–98. Because of the lack of mutuality between Mrs. Warda and the Commissioner, neither lawsuit precludes the parties from litigating the nature of Mrs. Warda's interest in the land she transferred to her son.[3]

### III.

■ Although neither res judicata nor collateral estoppel apply directly, we cannot ignore the previous two state lawsuits, especially the 1953 probate action. Under the instant circumstances we believe that the doctrine of judicial estoppel mandates that the 1953 decree is conclusive and precludes Mrs. Warda from challenging that decree.

■ Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding. *Teledyne Indus. v. National Labor Relations Bd.,* 911 F.2d 1214, 1217 (6th Cir.1990); *Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 472 (6th Cir.1988); *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir.1982).[4] This doctrine "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving

success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne,* 911 F.2d at 1218. Mrs. Warda attempts to do precisely this in the current litigation. In 1953 she persuaded the probate court that title to her father's land was rightfully hers; now she attempts to persuade this Court that title to that land properly rests in her son, Henry Warda. The judicial estoppel doctrine addresses and attempts to prevent this sort of inconsistency.

■ Judicial estoppel applies when a party "took a contrary position under oath in a prior proceeding" and this earlier position "was accepted by the court." *Teledyne,* 911 F.2d at 1218. The doctrine does not require a finding that an opponent relied on the position taken by the party in the earlier litigation, and it does not require a showing of mutuality. *Id.* at 1220. It does mandate a finding of "judicial acceptance", however: judicial estoppel governs a dispute only if the first court "adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.* at 1218. The issue we must decide, then, is whether the probate court in 1953 endorsed Mrs. Warda's legal position when it approved the settlement she offered during that litigation. We think that it did.

■ It is true that a settlement, even in the form of an agreed order, usually does not constitute judicial acceptance of the terms the settlement contains. *Teledyne,* 911 F.2d at 1219; *Reynolds,* 861 F.2d at 473. But the approval of a settlement satisfies the judicial acceptance requirement when the court is obliged to ensure that the settlement is fair and equitable, *Teledyne,* 911 F.2d at 1219, and when the court cannot discharge its

---

3. It is true that in 1992 the Michigan probate court believed the Commissioner to be an "interested party" who had been served with notice of the action and had appeared in the probate litigation by virtue of the letter described above. (*In re Estate of Matthews,* No. 17664 at *3, ¶ 1.) But the Commissioner was not a "creditor" of Mr. Matthews' estate as defined by Michigan law, nor did the Commissioner otherwise hold property rights in that estate. Mich.Comp.Laws Ann. § 700.7(4).

4. Federal standards govern the application of judicial estoppel in federal court. *Edwards,* 690

F.2d at 598, n. 4. This is because the doctrine is designed to protect the integrity of judicial institutions, and because the question (when presented in federal court) primarily concerns federal interests. *Id.* The courts of Michigan have defined their judicial estoppel doctrine in terms that are virtually identical to those used in the Sixth Circuit, however, and we feel confident that the result we reach under federal law would be achieved with equal dispatch under Michigan law. *See, e.g., Lichon,* 459 N.W.2d at 293 *and Michigan Gas Util. v. Public Serv. Comm'n,* 200 Mich.App. 576, 505 N.W.2d 27, 31 (1993).

duties by acting as "a mere rubber stamp", *Reynolds*, 861 F.2d at 473. Thus, for example, judicial acceptance occurs in the context of a bankruptcy settlement when the court approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position. *Reynolds*, 861 F.2d at 473. The similarity between the approval of a bankruptcy settlement and the action of the Michigan probate court forty years ago suggests that judicial acceptance occurred in this case in 1953.

There seems little doubt that the probate court in 1953 approved the parties' settlement in large part on the strength of Mrs. Warda's claim that only the codicil and the first will were legally valid. Mrs. Warda, her husband, and her attorney emphasized this position throughout the 1953 proceedings. The probate court acknowledged the soundness of this legal argument when it permitted Henry Warda's father to join the settlement on the boy's behalf. Mrs. Warda's legal position became all the more important in light of the probate court's twin duties to assure that a good faith controversy existed regarding the efficacy of the two wills and that the settlement was just and reasonable with respect to Henry's interests. *In re Marxhausen's Estate*, 247 Mich. 192, 225 N.W. 632, 634 (1929).[5]

■ Mrs. Warda now wishes to argue that she was not entitled to inherit her father's land. But it is too late in the day for Mrs. Warda to advance her new theory. She inherited substantial wealth many years ago, and she benefited from the ownership of that property for many years as a result of the 1953 probate court's acceptance of her original theory. She cannot prevail again by arguing the opposite in court now. We recently noted the incongruity of allowing a litigant to defeat her own actions by attacking the validity of a settlement that she had willingly procured, and we refused to grant the litigant relief based upon her own bad acts. *See In re Green*, 986 F.2d 145, 148, 150 (6th Cir.1993). We will not permit Mrs. Warda to accomplish the same result. Her efforts represent a "knowing assault on the integrity of the judicial system", *Reynolds*, 861 F.2d at 474, and, under the doctrine of judicial estoppel, that assault must fail.[6]

## IV.

■ We would not reach a different result if we resolved this litigation on the merits of Mrs. Warda's constructive trust argument. We note, first, that Mrs. Warda has shown no causal link between the attorney's conflict of interest and the 1953 probate court's approval of the settlement by which she inherited her father's land. Mrs. Warda's success in 1953 depended on the probate court's acceptance of her legal argument that the codicil to Mr. Matthews' first will impliedly revoked the second will and revived the first instrument. The strength of this legal argument remains untested to this day; even

---

5. The probate court which reopened Mr. Matthews' estate in 1990 was harshly critical of the 1953 court's discharge of its duties. It does appear that the 1953 court ignored, or at least failed to identify, conflicts of interest affecting Henry Warda's attorney and legal guardian. The crucial issue, though, is whether the court endorsed Mrs. Warda's legal argument regarding the first will's validity when the court approved the probate settlement. That the 1953 court indeed depended on this legal position cannot be doubted. The *correctness* of Mrs. Warda's original legal argument remains a matter of some dispute, though the later probate court declined to resolve the matter once and for all. But the possibility that the 1953 court might have been wrong in its estimation of Michigan law need not concern us. The focus of judicial estoppel is not on the correctness of an earlier court's ruling or on the truthfulness of the argument made by a party originally; the doctrine instead "precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218. The issue, then, is not whether the 1953 court was *correct* in its acceptance of Mrs. Warda's legal position, but whether the court accepted that argument at all.

6. It is not clear whether the tax court based its ruling on a correct application of the judicial estoppel doctrine, or relied instead on a misunderstanding of claim or issue preclusion rules, or chose still another foundation for its decision. We need not investigate this matter, however; an appellate court may affirm on any ground supported by the record, even though the ground relied on by the lower court was different from the one chosen by the appellate panel. *United States v. American Railway Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924); *Hilliard v. United States Postal Serv.*, 814 F.2d 325, 326 (6th Cir.1987).

**540**

the Michigan probate court in 1990, though otherwise unstinting in its criticism of its 1953 predecessor, refused to declare that the 1953 court was legally wrong in finding the first will valid. (*In re Estate of Matthews*, at *18–20, ¶ 31.)

The record therefore simply does not indicate that Mrs. Warda's improper conduct had any effect on the probate court's decision to adopt Mrs. Warda's legal argument, and it certainly cannot be contended that the legal argument itself was fraudulent. Henry Warda did not have an irrefutable right to his grandfather's estate under the second will. He held, at best, a "not insubstantial" claim to his grandfather's estate. (*See In re Estate of Matthews* at *20, ¶ 31.) His mother held no less. Under even the best of circumstances, then, Henry Warda could have emerged from the 1953 probate with nothing. As it happened, he fared better under the 1953 settlement than he might have otherwise; Henry Warda himself has suggested that his parents pursued the settlement in part to prevent Mr. Matthews' estate from falling under the exclusive control of Mr. Matthews' wife and his trustee. At the time, this result appeared to be highly beneficial for both Henry Warda and his mother. We, therefore, doubt the soundness of imposing *ex post facto* a constructive trust on Mrs. Warda without first determining that she inherited her father's land on the basis of her fraudulent acts. *Hudson v. Hudson*, 363 Mich. 23, 108 N.W.2d 902, 905 (1961).

Even if we accept that the taint upon the 1953 proceedings contributed to Henry Warda's disinheritance, equity does not require intervention at this late date. Henry Warda has not lacked the opportunity or wherewithal to remedy any harm his mother caused him during the 1953 proceedings. He reached his majority before his grandfather's estate was closed,[7] and he learned the details of the will contest and resulting settlement by that time or soon thereafter. He nevertheless chose not to challenge his mother's conduct until Mrs. Warda's many gifts to her son forced the probate court in 1992 to impose a singularly curious constructive trust, one that did not even purport to remove wrongfully withheld property from Mrs. Warda, so that the property could vest in Henry Warda. The probate court could not

do this, presumably because Henry Warda already was the outright owner of his grandfather's estate. In essence, the most recent probate action merely "cooked the records" pertaining to Mr. Matthews' former estate, making mere bookkeeping changes rather than altering the status quo. Whatever wrong was done to Henry Warda, if any, does not mandate the rejection of a tax liability properly assessed against Mrs. Warda in order to remedy any slight suffered by Henry Warda four decades past.

### V.

We hold that the doctrine of judicial estoppel precludes Mrs. Warda from denying the validity of the 1953 probate settlement which made her the heir to her father's estate. We hold further that Mrs. Warda has failed to establish that the probate court's acceptance of this settlement was prompted by her own wrongful acts such that a constructive trust should be imposed on the lands she inherited under the agreement. We therefore **AFFIRM** the decision of the United States Tax Court.

---

7. Henry Warda was born on April 18, 1934. He was over 21 years of age when his grandfather's estate was closed on July 11, 1955.