RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0110P (6th Cir.)
File Name: 03a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 01-1499/1866
RENEE HANSMANN,
            *Plaintiff-Appellant,*

            *v.*

FIDELITY INVESTMENTS
INSTITUTIONAL SERVICES
COMPANY,
            *Defendant-Appellee,*

VINCENT BOSCHERATTO,
Independent Personal
Representative of the Estate
of Irone Pavan, Deceased,
            *Intervenor-Appellee.*

Nos. 01-1500/1868
UNICARE LIFE & HEALTH
INSURANCE COMPANY, et al.,
            *Plaintiffs,*

            *v.*

RENEE HANSMANN,
            *Defendant-Appellant,*

Nos. 01-1499/
1500/1866/1868

VINCENT BOSCHERATTO,
Independent Personal
Representative of the Estate
of Irone Pavan, Deceased,
            *Defendant-Appellee,*

IRIDE PAVAN,
            *Defendant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 00-71035; 00-72772—
Arthur J. Tarnow, District Judge.

Argued: October 18, 2002

Decided and Filed: April 10, 2003

Before: BOGGS, SUHRHEINRICH, and CLAY, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Edward C. Cutlip, Jr., KERR, RUSSELL &
WEBER, Detroit, Michigan, for Appellant. Gary R.
Trzaskos, GARY R. TRZASKOS & ASSOCIATES, Walled
Lake, Mighigan, for Appellees. **ON BRIEF:** Edward C.
Cutlip, Jr., KERR, RUSSELL & WEBER, Detroit, Michigan,
for Appellant. Gary R. Trzaskos, GARY R. TRZASKOS &
ASSOCIATES, Walled Lake, Mighigan, for Appellees.

———————————

## OPINION

———————————

CLAY, Circuit Judge. This is a consolidated appeal. In Case Nos. 01-1499 and 01-1866, Appellant, Renee Hansmann, appeals from the district court's order granting summary judgment in favor of Appellee, the Estate of Irone Pavan ("the Estate"), awarding the proceeds of Irone Pavan's employer-sponsored stock investment plan to the Estate. In Case Nos. 01-1500 and 01-1868, Hansmann appeals from district court's order granting summary judgment in favor of the Estate, awarding the proceeds of Irone Pavan's employer-sponsored life insurance plan to the Estate. Hansmann also appeals from the district court's order denying Hansmann's motion for reconsideration. For the reasons set forth below, we **AFFIRM** the district court's orders.

## BACKGROUND

Irone Pavan ("Pavan") began working for Ford Motor Company ("Ford") on July 12, 1962. On September 17, 1962, Pavan elected Ford's Basic Group Life Insurance, administered by John Hancock Mutual Life Insurance Company ("John Hancock") and UNICARE Life & Health Insurance Company ("UNICARE"). Pavan designated his mother, Iride Pavan, as the beneficiary. Pavan also elected to participate in the Ford Savings and Stock Investment Plan for Salaried Employees ("SSIP").

Pavan and Hansmann married on January 23, 1971. On March 8, 1971, Pavan changed his beneficiary designation from his mother to Hansmann. Pavan filed a complaint for annulment on December 16, 1971, alleging that Hansmann entered the marriage through deceit, fraud and concealment, and that the marriage had never been consummated. Pavan obtained a default judgment of annulment on April 20, 1972. Pavan and Hansmann had little or no contact thereafter.

Pavan elected Optional Life Insurance at four times his salary on February 18, 1980. The Optional Life Insurance was through the Basic Group Life Insurance Policy. The Optional Life Insurance election form stated that: "The beneficiary(ies) for Optional Life Insurance on my life shall be the same as designated for my Basic [Group] Life Insurance unless I specify otherwise below[.]" (J.A. at 669.) Pavan did not specify a beneficiary under the Optional Life Insurance.

Pavan and Lynn Anderle married on September 17, 1982. Subsequently, Ford announced a new policy whereby all previous SSIP beneficiary designations were rendered invalid as of January 1, 1983. Under the new policy, if an employee did not designate a new beneficiary, the person entitled to receive the employee's life insurance proceeds would also receive the SSIP proceeds upon the employee's death. On September 27, 1982, Ford issued a supplement to the prospectus and a reminder on December 15, 1982 to explain the new provision in the SSIP documents. Pavan did not designate a new beneficiary under the SSIP.

On November 7, 1985, Pavan completed and signed a form electing to continue his Optional Life Insurance at four times his salary and to provide $50,000 spousal coverage for his then second wife, Anderle.

Pavan obtained a default judgment of divorce against Anderle on April 18, 1986. The default judgment of divorce voided the Optional Life Insurance coverage of Anderle.

Pavan retired from Ford on July 31, 1992. On September 19, 1997, Pavan executed his Last Will and Testament ("Will"). In his Will, Pavan named his two nephews, Vincent Boscheratto and Paul Boscheratto, as beneficiaries of his estate. The Will does not mention the proceeds of the SSIP or of the life insurance policies.

Pavan died on June 1, 1999. At the time of Pavan's death, the proceeds of the Basic Group Life Insurance were valued

at $38,406.87, while the proceeds of the Optional Life Insurance were valued at $178,560. UNICARE's records showed "Renee Pavan" ("Hansmann") as the designated beneficiary of the Basic Group Life Insurance.

Letters of authority were issued to Vincent Boscheratto ("Boscheratto") on July 26, 1999, appointing him as the independent personal representative for the Estate. Boscheratto informed UNICARE of his appointment on September 16, 1999. Thereafter, on October 26, 1999, UNICARE informed Boscheratto that Hansmann had an interest as a beneficiary in Pavan's life insurance proceeds. Boscheratto, on behalf of the Estate, protested the payment of any life insurance proceeds to Hansmann. Consequently, John Hancock and UNICARE filed a complaint for interpleader (Case Nos. 01-1500 and 01-1868) on February 24, 2000. A stipulated order was entered on June 15, 2000, dismissing John Hancock and UNICARE from the case. John Hancock and UNICARE deposited the Basic Group Life Insurance proceeds and the Optional Life Insurance proceeds, totaling $210,883.15, with the district court.

Hansmann filed a complaint (Case Nos. 01-1499 and 01-1866) against Ford and Fidelity Investment Institutional Services Company ("Fidelity") for the proceeds of the SSIP on June 20, 2000. Ford was voluntarily dismissed from the case on July 19, 2000. The Estate requested and was granted leave to intervene at a hearing held on February 8, 2001.

At the hearing, the district court, on cross-motions for summary judgment by Hansmann and the Estate, held that the Estate was the proper beneficiary of all the proceeds of the Basic Group Life Insurance, the Optional Life Insurance, and the SSIP. The district court reasoned that Michigan law, not the Employment Retirement Income Security Act ("ERISA"), applied because the transaction that gave rise to the claim had occurred before the effective date of ERISA. The district court further reasoned that Michigan's public policy required the application of Mich. Comp. Laws Ann. § 552.101, thereby

rendering void the spousal beneficiary designation under the Basic Group Life Insurance Policy due to the annulment of the marriage between Pavan and Hansmann. On March 9, 2001, the district court entered an order granting the Estate's motion for summary judgment and denying Hansmann's motion for summary judgment.

Hansmann filed a motion for reconsideration on February 27, 2001, alleging that annulments do not fall under § 552.101 and, therefore, Hansmann, as the named beneficiary under the Basic Group Life Insurance Policy, should receive the Basic Group Life Insurance, the Optional Life Insurance, and the SSIP proceeds. The district court denied Hansmann's motion for reconsideration on May 22, 2001.

Hansmann timely filed a notice of appeal on June 20, 2000. Hansmann now appeals the district court's denial of her motion for summary judgment and motion for reconsideration.

## DISCUSSION

## I. APPLICATION OF ERISA PREEMPTION

We review the district court's grant of summary judgment *de novo*. *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 419 (6th Cir. 1997); *Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 128 (6th Cir. 1996). Summary judgment is appropriate when there is no dispute as to any material question of fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.

At issue in this case is whether the district court was correct in finding that Hansmann's claims are governed by Michigan law. Two provisions of ERISA determine whether ERISA applies to preempt Michigan law. The provisions provide in relevant part:

(a) Supersedure; effective date. Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

(b) Construction and application. (1) This section shall not apply with respect to any cause of action, which arose, or any act or omission that occurred, before January 1, 1975.

29 U.S.C. § 1144(a)-(b).

In *Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund*, 979 F.2d 444 (6th Cir. 1992), we interpreted the application of ERISA § 1144(b)(1) as follows:

The application of ERISA thus depends upon: 1) a determination of the time the cause of action arose, and 2) a determination of the time of acts or omissions. *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 71 (4th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989) (citing cases). Therefore, under section 1144(b)(1), if either "the cause of action arose" or relevant "acts of omissions" on which a pension fund based a post-1975 benefits decision occurred before January 1, 1975, then ERISA does not apply.

979 F.2d at 451.

The first prong of the § 1144(b)(1) test under *Stevens* is not at issue. Hansmann and the Estate agree that the cause of action did not arise until after January 1, 1975 because no benefits were due until after Pavan's death on June 1, 1999. However, Hansmann and the Estate disagree with respect to the second prong of the § 1144(b)(1) test under *Stevens*.

Hansmann argues that ERISA applies since the following allegedly relevant acts or omissions in this case occurred after January 1, 1975, the effective date of ERISA: (1) UNICARE administered and updated its plan documents from the date that Pavan signed his last beneficiary designation until his death on June 1, 1999; (2) Fidelity administered and held all the assets of the SSIP from the date that Pavan signed his last beneficiary designation until his death on June 1, 1999; (3) Ford filed Pavan's Optional Life Insurance application with UNICARE on February 18, 1980 and on November 7, 1985; (4) Ford changed its beneficiary designation documents as to the SSIP as of January 1, 1983; (5) UNICARE interpreted the plan documents as of the date of Pavan's death on June 1, 1999; and (6) UNICARE and Fidelity was informed by the Estate that it protested Hansmann's beneficiary designation after June 1, 1999. Hansmann further argues that § 1144(b)(1) only applies to the acts or omissions of an employer or plan fiduciary, and that the uniform rule is that ERISA preempts Michigan law when an ERISA plan fiduciary interprets a post-ERISA plan. We disagree with Hansmann's arguments.

As to Hansmann's first, second, fifth, and sixth claim of relevant acts, we find the fact that the Basic Group Life Insurance and the SSIP documents were administered, interpreted, and disputed after the effective date of ERISA irrelevant since we found in *Stevens* that these acts did not determine whether ERISA applies. 979 F.2d at 450-52.

As to Hansmann's third claim of relevant acts, we find the fact that Ford filed Pavan's Optional Life Insurance application with UNICARE on February 18, 1980 and on November 7, 1985 irrelevant. Pavan's election of Optional Life Insurance on February 18, 1980 neither acted as a reaffirmation of the Hansmann spousal beneficiary designation dated March 8, 1971, nor as an act to negate the application of ERISA § 1144(b)(1). The Optional Life Insurance election form reflects the fact that Pavan increased his life insurance coverage to four times his salary. In

addition, Pavan's election to continue his Optional Life Insurance and to provide $50,000 spousal coverage for his then second wife, Anderle, on November 7, 1985 is irrelevant to Hansmann's claim to the proceeds of the Basic Group Life Insurance or the SSIP. The Optional Life Insurance coverage of Anderle terminated upon the default judgment of divorce on April 18, 1986.

As to Hansmann's fourth claim of relevant acts, we find irrelevant the fact that Ford changed its beneficiary designation documents to the SSIP as of January 1, 1983. The Ford SSIP notice in 1982 provided that the beneficiary of the Basic Group Life Insurance would receive the SSIP proceeds upon Pavan's death unless a new beneficiary was provided on or after November 1, 1982. Since Pavan obtained a default judgment of annulment against Hansmann on April 20, 1972 and Mich. Comp. Laws Ann. § 552.101 was effective at that time, Pavan had every reason to believe that his parents, if living, or his estate would be the beneficiary of the Basic Group Life Insurance. Thus, the Ford SSIP notice created no need for Pavan to designate a new beneficiary for the proceeds of the SSIP or the Basic Group Life Insurance.

We therefore reject Hansmann's arguments in their entirety. Instead, we find that the relevant acts or omissions in this case occurred before the effective date of ERISA. Such acts or omissions include the following: Pavan elected the Basic Group Life Insurance Policy on September 17, 1962, Pavan elected to participate in the SSIP in 1962, Pavan married Hansmann on January 23, 1971, Pavan changed his beneficiary designation under the Basic Group Life Insurance Policy to Hansmann as his "wife" on March 8, 1971, and Pavan obtained a default judgment of annulment against Hansmann on April 20, 1972.

These pre-ERISA acts or omissions of Pavan are the most relevant in determining whether ERISA applies inasmuch as once Pavan obtained a default judgment of annulment on

April 20, 1972, Hansmann was no longer his wife as a matter of law. *See* BLACK'S LAW DICTIONARY 89 (7th ed. 1999) (stating that an annulment establishes that the marital relationship never existed in law). Thus, Hansmann's interests in the Basic Group Life Insurance terminated as of April 20, 1972 since she legally was no longer Pavan's wife as indicated on the election form.

Because the relevant acts or omissions occurred before the effective date of ERISA, January 1, 1975, Hansmann must seek relief under Michigan Law. *Stevens*, 979 F.2d at 450.

## II.   APPLICATION OF MICH. COMP. LAWS ANN. § 552.101

Mich. Comp. Laws Ann. § 552.101(2) provides in relevant part:

> If the judgment of divorce or judgment of separate maintenance does not determine the rights of the wife in and to a policy of life insurance, endowment, or annuity, the policy shall be payable to the estate of the husband or to the named beneficiary if the husband so designates. However, the company issuing the policy shall be discharged of all liability on the policy by payment of its proceeds in accordance with the terms of the policy, unless before the payment the company receives written notice, by or on behalf of the insured or the estate of the insured or 1 of the heirs of the insured, or any other person having an interest in the policy, of a claim under the policy and the divorce.

Hansmann argues that the district court erred in applying Mich. Comp. Laws Ann. § 552.101 to an annulment since the plain language of the statute does not include annulments. In support of her argument, Hansmann cites *Hudson v. Hudson*, 108 N.W.2d 902 (Mich. 1961). In *Hudson*, Francis and Thetis Hudson married on September 17, 1956. Francis obtained a default judgment of annulment against Thetis on grounds of fraud on May 28, 1957. Four months later, on

September 27, 1957, Francis died, leaving Thetis as the named beneficiary of his life insurance proceeds. By misrepresenting herself as Francis' surviving spouse, Thetis collected all of Francis' assets, including the life insurance proceeds. Francis' estate filed suit against Thetis seeking to recover all of Francis' assets. The Michigan Supreme Court held that Thetis fraudulently obtained some of Francis' assets inasmuch as she knowingly misrepresented herself as Francis' surviving spouse. *Id*. at 905. The court further held that because Thetis was the named beneficiary of the life insurance proceeds, Thetis was entitled to the proceeds unless she fraudulently induced the beneficiary designation. *Id*. The court reasoned that the fraud committed to obtain the other assets did not warrant the application of the doctrine of constructive trusts to the life insurance proceeds, and remanded the case with instructions that the lower court determine whether Thetis fraudulently induced the beneficiary designation. *Id*. at 905-06.

We are not persuaded by Hansmann's reliance on *Hudson* since the Michigan Supreme Court did not address the issue of whether annulments are encompassed within Mich. Comp. Laws Ann. § 552.101 in that case. Hansmann argues that the Michigan Supreme Court's silence on this issue in *Hudson* should be interpreted as an implicit rejection of the estate's argument that § 552.101 voided the beneficiary designation as of the date of the annulment. Hansmann's argument is without merit where, as discussed above, nothing in *Hudson* suggests that the Michigan Supreme Court considered § 552.101 in reaching its holdings.

Review of Michigan law indicates that annulments were intended to be included within § 552.101. For example, the Michigan Court Rules promulgated by the Michigan Supreme Court have mandated, since 1985, that all judgments of annulment include the insurance provisions of § 552.101. *See* MICH. CT. R. 3.211. Furthermore, in April of 1972, as now, the annulment statutory provisions were part of Chapter 552 of the Michigan Compiled Laws Annotated entitled

"Divorce." *See* Mich. Comp. Laws Ann. § 552.12 (stating in relevant part "[s]uits to annul or affirm marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of equity").

Further support that annulments are to be included within § 552.101 can be found in *Mixon v. Mixon*, 216 N.W.2d 625 (Mich. Ct. App. 1974). In *Mixon*, the Michigan Court of Appeals held that the trial court's award of marital property to the plaintiff was inequitable inasmuch as it reimbursed the plaintiff for contributions to real and personal property which were not assets of the marriage at the time of trial. *Id*. at 701-02. The parties in *Mixon* married on May 28, 1965, and separated on May 23, 1970. The plaintiff filed a complaint for annulment against the defendant on November 12, 1970. The trial court entered a judgment of annulment against the defendant awarding the plaintiff marital property in the amount of $6,444.96. On appeal, the Michigan Court of Appeals reasoned that although the plaintiff's complaint for annulment was filed on November 12, 1970 (at a time when Mich. Comp. Laws Ann. § 522.19 did not specifically include the disposition of marital property after the granting of an annulment), the trial court may make a "just and reasonable disposition" of the marital property since the "law regarding property settlements upon annulment is similar to that of divorce." *Id*. at 700. Thus, *Mixon* illustrates Michigan's intent to treat annulments like divorces.

Finally, the plain language of § 552.101 indicates that its purpose is to terminate a surviving ex-spouse's rights in the deceased spouse's life insurance proceeds. Because there is no logical difference between a marriage terminated by annulment or divorce for our purposes here, § 552.101 should apply to bar Hansmann's claims. We therefore conclude that the district court did not err in finding that § 552.101 voids the spousal beneficiary designation under the Basic Group Life Insurance Policy due to the annulment of the marriage between Pavan and Hansmann.

### III.  H A N S M A N N ' S   M O T I O N   F O R RECONSIDERATION

Ordinarily, we review a denial of a motion to alter or amend a judgment, pursuant to Federal Rule of Civil Procedure 59(e), for abuse of discretion.  *Columbia Gas Transmission Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991) (citing *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982)).  "When, however, a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we conduct *de novo* review."  *Columbia Gas Transmission* Corp., 951 F.2d at 112 (citing *Huff*, 675 F.2d at 123 n.5)).

The district court must grant a motion for reconsideration if the movant demonstrates that the district court and the parties have been misled by a palpable defect, and correcting the defect will result in a different disposition of the case. *Valassis Communications*, *Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996) (quoting E.D. Mich. L.R. 7.1(h)).  Hansmann argues that the district court abused its discretion in denying her motion for reconsideration in light of *Hudson*.

Since the district court correctly determined that *Hudson* offered no guidance to this case, as discussed above, we find that there was no palpable defect.  Thus, the district court did not err in denying Hansmann's motion for reconsideration.

### CONCLUSION

For the forgoing reasons, we **AFFIRM** the district court's orders.