60 F.3d 829
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 THIRD NATIONAL BANK IN NASHVILLE, Trustee, Plaintiff-Appellant,
v.
SHOWBIZ PIZZA TIME, INC., Defendant-Appellee.
 No. 94-5603.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1995.
 
 Before: BOGGS and NORRIS, Circuit Judges; and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Third National Bank in Nashville, appeals a judgment in favor of defendant-appellee, Showbiz Pizza Time, Inc., ("Showbiz") dismissing Third National's complaint against Showbiz. For the reasons set out below, we affirm.
 
 
 2
 * On July 23, 1993, Third National Bank filed a successor liability action against Showbiz in the Circuit Court for Davidson County, Tennessee. The complaint alleged that Showbiz was liable for debts its alleged predecessor, Integra Corporation, owed to Third National. Showbiz removed the case to federal court and filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), which the district court granted on April 7, 1994.
 
 
 3
 In June 1980, Third National entered into a loan relationship with the Brock Hotel Corporation. Third National served as trustee under a municipal bond issue to renovate the Hermitage Hotel in Nashville. After the bonds were issued, Brock Hotel Corporation acquired the leasehold interest in the Hermitage Hotel. Brock executed a guarantee in favor of Third National dated June 1, 1980, whereby Brock guaranteed the $6.4 million bond issue. Brock Hotel Corporation is now "Integra -- A Hotel and Restaurant Company" ("Integra").
 
 
 4
 In the early 1980s, Integra began a subsidiary corporation, Showbiz Pizza Time, Inc. Third National maintains that Integra operated Showbiz with common officers and directors, and shared managerial and administrative resources, until it "spun-off" Showbiz by declaring a stock dividend, paid to Integra shareholders, in the form of Showbiz stock.
 
 
 5
 In the mid-1980s, while Showbiz was losing money, Integra supported Showbiz through inter-company loans. In 1986, a major "financial restructuring" took place at Integra, with the assistance of The Hallwood Group, Inc., a major shareholder. Through this restructuring, Integra paid off most of Showbiz's debts -- allegedly without receiving adequate consideration.
 
 
 6
 After the restructuring, Showbiz became profitable. However, the restructuring allegedly devalued Integra's other assets because Integra drained them to support Showbiz. Since Integra's other operations had been losing money since the mid-1980s Showbiz allegedly represented 90 percent of the total value of assets owned by Integra by the end of 1988.
 
 
 7
 On December 31, 1988, Integra distributed or "spun-off" it stock in Showbiz to the common shareholders of Integra -- in other words, Integra "paid" its shareholders a "stock dividend" of Showbiz stock. Integra's shareholders now owned Showbiz directly, rather than through Integra.
 
 
 8
 Without its most valuable asset, Integra began to founder. Only support from Hallwood kept it afloat. Finally, in 1992, Hallwood decided to end Integra's financial "life support system," leaving Integra to file for bankruptcy.
 
 
 9
 Third National's briefs present a more nefarious version of events. According to Third National, Integra and "The Hallwood Group" recognized the financial difficulties facing Integra. Hallwood then hatched a plot to fund Showbiz and turn it into a profitable business. It did so through loans by Integra. When, through a combination of acumen and good fortune, Showbiz became a profitable venture, Integra forgave the loans for inadequate consideration. Integra then "spun-off" Showbiz as a stock dividend to the shareholders of Integra (including of course the Hallwood Group). Shrewd enough to realize that this put the primary asset of Integra outside the reach of Integra's creditors, Hallwood propped up Integra for a few years before letting it sink under the weight of its debt. According to the briefs, during these events Integra and Showbiz shared common directors, officers, and owners. Unfortunately for Third National this is not what the complaint alleges; and it is the complaint that matters.
 
 II
 
 10
 Whether a district court has correctly dismissed a suit pursuant to Fed. R. Civ. P. 12(b)(6) is a question of law, and therefore subject to de novo review. Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 296 (6th Cir. 1993); Allard v. Weitzmen (In Re DeLorean Motor Co.), 991 F.2d 1236, 1239-40 (6th Cir. 1993). The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. Allard, 991 F.2d at 1240; Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. Allard, 991 F.2d 1240; Mayer, 988 F.2d at 638. Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. Allard, 991 F.2d at 1240; Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990).
 
 
 11
 However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. Allard, 991 F.2d at 1240. "In practice, 'a ...complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."' Ibid. (quoting Schied v. Fanny Farmer Candy Shops, 859 F.2d 434, 436 (6th Cir. 1988)). See also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (court does not afford liberal Rule 12(b)(6) review to legal conclusions and unwarranted factual inferences); Ana Leon T. v. Federal Reserve Bank, 823 F.2d 928, 930 (6th Cir.) (per curiam) (court does not afford liberal Rule 12(b)(6) review to mere conclusions), cert. denied, 484 U.S. 945 (1987).
 
 
 12
 We agree with the district court that the complaint should be dismissed, but for different reasons. See Warda v. Commissioner, 15 F.3d 533, 539 n.6 (6th Cir.), cert. denied, U.S. , 115 S. Ct. 55 (1994) ("an appellate court may affirm on any ground supported by the record, even though the ground relied on by the lower court was different from the one chosen by the appellate panel"). See also United States v. American Ry. Express Co., 265 U.S. 425, 435 (1924); Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir. 1985) (per curiam). The district court found that the complaint was flawed because it failed to allege any asset transfer between Integra and Showbiz.[1] We need not address this question because we agree with Showbiz's argument, which it has maintained throughout this action, that Third National's complaint contains an equally fatal defect. Simply stated, Third National's complaint never alleges any facts that would bring it within any exception to the hornbook rule that a corporate successor is generally not liable for the debts of its predecessor.
 
 
 13
 The general rule regarding successor liability, as Third National concedes, is that "when one company sells or transfers all of its assets to another, the purchaser does not become liable for the debts and liabilities ... of the transferor. However, a purchaser may be liable for the obligations of the selling corporation in any one of the following four situations:
 
 
 14
 (1) the purchaser expressly or impliedly assumes such obligations;
 
 
 15
 (2) the transaction amounts to a consolidation or merger of the seller into the purchaser;
 
 
 16
 (3) the purchaser is merely a continuation of the seller; or
 
 
 17
 (4) the transaction has been entered fraudulently." Elmer v. Tenneco Resins, Inc., 698 F. Supp. 535, 540 (D. Del. 1988).
 
 
 18
 Even assuming that there is an asset transfer from Integra to Showbiz, the complaint fails to allege any facts that would support the application of an exception to the general rule. Third National focuses on exceptions one, three, and four.[2]
 
 
 19
 Third National weakly advances the first exception. Third National claims that a successor clause in the original contract between Integra and Third National makes the successor, Showbiz, liable. However, other than briefly mentioning the existence of a successor clause in Paragraph Four of the complaint, Third National never provides any facts to support its allegation that this clause controls.
 
 
 20
 There is also no allegation in the complaint of conduct approaching fraud, the fourth exception. Paragraph Seventeen of the complaint contains the only accusation that can be remotely considered to encompass fraud. Third National alleges that "the purpose and effect of the spinoff of Showbiz was to allow Integra and its owners to wrongfully escape Integra's lawful debts" (emphasis added). However, the spinoff alone, and any fraud during it, will not suffice because the spinoff did not involve an asset transfer to Showbiz. The spinoff transferred assets from Integra to Integra's shareholders, not to Showbiz. Finally, to the extent that the complaint alleges fraud, it fails to meet the specificity requirements of Fed. R. Civ. P. 9(b).
 
 
 21
 Further, exception three, the one advanced most vigorously in the briefs, also fails. As Third National acknowledges, the key elements of the mere continuation doctrine are common identity of the officers, directors, and stockholders in the old and new corporations. Bud Antle, Inc. v. Eastern Food, Inc., 758 F.2d 1451, 1458-59 (11th Cir. 1985). According to Third National, the most important element in this analysis is whether there is identity of ownership. Weaver v. Nash Int'l, Inc., 730 F.2d 547, 548 (8th Cir. 1984).
 
 
 22
 While the briefs make a strong argument and offer substantial assertions about common ownership and common management, it is the complaint, not the briefs, that the court reviews for sufficiency. The complaint fails to provide a single fact that would allow even a colorable inference that Showbiz was a mere continuation of Integra. In the portions of the complaint describing the post-spinoff relationship, beginning with Paragraph Ten, there are no factual allegations supporting the argument that Showbiz was a mere continuation of Integra.
 
 
 23
 There is no allegation of common officers, directors, and stockholders in the old and new corporations.[3] The sole statement about continuation is in Paragraph Seventeen, the last one. Third National alleges that "Thus, following the spinoff, Showbiz was in fact the successor to and the substantial continuation of pre-spinoff Integra." However, this is the type of legal conclusion to which the court does not afford liberal review. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (court does not afford liberal Rule 12(b)(6) review to legal conclusions and unwarranted factual inferences); Ana Leon T. v. Federal Reserve Bank, 823 F.2d 928, 930 (6th Cir.) (per curiam) (court does not afford liberal Rule 12(b)(6) review to mere conclusions), cert. denied, 484 U.S. 945 (1987).
 
 
 24
 Therefore, because Third National has failed to allege facts that would bring it under an exception to the general rule of corporate successor liability (even under the liberal Rule 12(b)(6) standard) we conclude that the district court properly dismissed the complaint.
 
 III
 
 25
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The district court correctly noted that the first prerequisite of any successor liability case is the transfer of some assets from the predecessor to the successor, in this case, from Integra to Showbiz. The allegation, found in p 7 of the complaint, that "Integra undertook an internal restructuring in 1986 during which it paid off the majority of Showbiz's debts, [and] receiv[ed] inadequate consideration for having done so," may be sufficient
 
 
 [2]
 Understandably, Third National never argues for exception two, since the crux of the complaint is a "spinoff," not a merger or acquisition
 
 
 [3]
 Admittedly, at the first moment of the spinoff there was exact commonality of ownership because only Integra stockholders were paid with Showbiz stock. But since these companies were traded on a public exchange (Integra on the New York Stock Exchange, Showbiz apparently on NASDAQ) this ownership would immediately begin migrating to new parties