NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0238n.06
Filed: May 6, 2008

No. 06-4607

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| David L. Hammon, Sr., | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Respondent-Appellee. | ) | |

Before:     KEITH, CLAY, and GILMAN, Circuit Judges.

DAMON J. KEITH, Circuit Judge.  This case arises from a civil suit filed by the United States ("Government") against David L. Hammon Sr. ("Hammon") to reduce to judgment unpaid wagering excise tax, penalties, and interest assessments for tax periods ending January 31, 1986, through November 30, 1988.  We address the Government's appeal following a $450,869 jury verdict and judgment in its favor.  In essence, the Government claims that (1) its initial $2.39 million tax assessment should have been awarded a presumption of accuracy, (2) Hammon should have been estopped from denying the accuracy of the Government's tax assessments, and (3) the district court should have awarded statutory interest on the jury verdict.  Upon review, we AFFIRM in part and REVERSE and REMAND in part.

I.  Background

From September 1984 to November 1988, Hammon was engaged in an illegal gambling

business. The FBI seized written records of Hammon's business on November 20, 1988.[1] In 1990, Hammon pled guilty to the information the Government filed charging him with engaging in an illegal gambling business from 1984 to 1988. In 1995, the IRS made assessments against Hammon for unpaid wagering excise taxes, penalties, and interest for the periods ending January 31, 1986, through November 30, 1988. The assessments totaled $2,398,519.20, and were based on records seized by the FBI and I.R.C. § 4401, which imposes a two percent excise tax on the gross amount of illegal wagers accepted by a person "who is engaged in the business of accepting wagers." Since then, the Government lost the seized records and therefore was unable to present them to substantiate the accuracy of its assessments.

Hammon entered another plea agreement in 2005, pleading guilty to: (1) possession of cocaine with the intent to distribute; (2) conducting an illegal gambling business during 2003 and 2004; (3) tax evasion with respect to the Government's 1995 wagering excise tax assessment; and (4) money laundering. Following the guilty plea, the district court sentenced Hammon to concurrent sentences of 87 months and 60 months, and ordered Hammon to pay $2.39 million in restitution.

The Government filed a civil complaint against Hammon later that year to recover taxes owed. In the civil case, the district court denied both parties' cross-motions for summary judgment on the accuracy of the Government's tax assessments, as well as the Government's motion to reconsider. After trial, the jury found in favor of the Government in the amount of $450,869.00. The district court denied the Government's motion for judgment as a matter of law as to the amount

---

[1] I.R.C. § 4403 requires bookmakers to keep daily records showing the gross amount of all wagers for which they are liable. Hammon did not maintain such records, throwing out his records every thirty days "[b]ecause it became clutter."

of taxes owed. Subsequently, the Government filed a motion to modify and clarify judgment in order to specify that the jury award did not include statutory interest, which the district court then denied. The Government now appeals. At issue in the present case is whether this Court should overturn the $450,869.00 jury verdict and judgment for taxes owed in Hammon's civil case.

## II. Summary Judgment

The Government claims that the district court erred as a matter of law in denying its motion for summary judgment in its civil case by: (1) shifting the burden of proof for the accuracy of the tax assessment back to the Government and (2) refusing to find that Hammon was judicially estopped from denying the correctness of the assessments.

### A. Standard of Review

The denial of summary judgment is reviewable after a trial on the merits where the question is purely a question of law. *Paschal v. Flagstar Bank*, 295 F.3d 565, 572 (6th Cir. 2002); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). Where the denial of summary judgment is based on a question of law, this Court reviews the decision *de novo*. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004).

The allocation of the burden of proof is generally a question of law. *Fuji Kogyo Co. v. Pacific Bay Int'l*, 461 F.3d 675, 681 (6th Cir. 2005) (quoting *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 326 (6th Cir. 2001)). When the question is whether a presumption has been rebutted, factual issues are reviewed for clear error. *United States v. Walton*, 909 F.2d 915, 919 (6th Cir. 1990). Mere general denials, however, are considered questions of law and therefore reviewed *de novo*. *Williams v. United States*, 46 F.3d 1132, 1995 WL 21431, *4 (6th Cir. Jan. 19, 1995)

(unpublished) ("Where a mere general denial of correctness is offered, without supporting documentary evidence, the finding of failure to rebut is one made as a matter of law, and thus, can be reviewed *de novo*.").

A district court's application of judicial estoppel is reviewed *de novo*. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). Because "'[p]lea agreements are contractual in nature'" and the interpretation of contracts are questions of law, "a district court's construction of a plea agreement presents a question of law which this [C]ourt reviews *de novo*." *United States v. Fitch*, 282 F.3d 364, 366 (6th Cir. 2002) (quoting *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

*B. Burden of Proof*

The Government contests the district court's determination that the Government bore the burden of proving the accuracy of its tax assessment against Hammon. In general, the Government is awarded an initial presumption of correctness for its assessment, placing the burden of disproving such assessments on the taxpayer. *United States v. Besase*, 623 F.2d 463, 465 (6th Cir. 1980). The Government, however, "can never rest its case on an assessment that lacks a minimal evidentiary foundation." *Walton*, 909 F.2d at 919. Where a taxpayer must make a "negative assertion," i.e., a showing that the taxpayer did not in fact earn income that the IRS claims he earned, "[r]easonable denials of the assessment's validity have sufficed in such cases to shift the burden back to the government." *Besase*, 623 F.2d at 465; *accord Walton*, 909 F.2d at 918. This Circuit's 'reasonable denial' rule was created to avoid infringing upon a taxpayer's Fifth Amendment privilege against self-incrimination. *Besase*, 623 F.2d at 466.

Thus, where a taxpayer is faced with the "impracticality and inequity" of proving a negative

assertion, the burden placed on the taxpayer is considerably lessened. *Id.* at 465; *accord Walton*, 909 F.2d at 918-19. Vague and general denials of the accuracy of the Government's assessment, however, are insufficient to constitute a reasonable denial. *Walton*, 909 F.2d at 922 (a "vague denial, which was modified moments later when [the taxpayer] acknowledged that BIRA did owe him $24,000, was certainly not sufficient to meet the defendant's burden of production"); *Williams*, 1995 WL 21431, at *4 (the taxpayer's "general denial of the accuracy of the assessment is insufficient to rebut the presumption of correctness as a matter of law.").

Here, the Government contends that Hammon's testimony was too vague and conclusory to constitute a reasonable denial and justify shifting the burden of proof back onto the Government. Hammon argued, during the district court hearing, that he would have needed to have earned $1.6 million per month in order to merit the $2.39 million in taxes assessed by the Government, which was calculated as two percent of Hammon's monthly salary. As to the actual amount earned in January 1986, Hammon testified:

> Q.   In January of 1986, did you accept during the month of January, 1986, $1 million or $2 million in bets?
> A.   No. No, sir, I did not.
> Q.   How much did you accept?
> A.   I can't really tell you legitimately.
> Q.   Why can't you really tell me legitimately? I want you to be legitimate.
> A.   It's 20 years ago, Number 1. And how could I possibly remember what I did 20 years ago? And the numbers are outrageous.
> Q.   Why are the numbers outrageous? Why would you say that?
> A.   Because it's a million dollars, million plus in one month, that's $250,000 a week. That's a lot of money. No, I never did that kind of – in that –
> . . .
> Q.   Did you ever again see the records that were seized?
> A.   No, sir.
> . . .

Q. Did you ever ask in this lawsuit to see the records that were seized?
A. Yes, sir – yes.
. . .
Q. After that, did you ever see the records that were seized?
A. No, sir.
. . .
Q. Well, Mr. Hammon, let me ask you this. What kind of bets did you accept during, let's say, January of 1986?
A. It was a long time to go back and really – not enough to be confused.
Q. Well –
A. In 1986, I – I took some bets, a thousand or two a game.
. . .
A. I have a lot of guys that bet $50 a game.

From this testimony, the district court concluded that because Hammon "faces special problems challenging the accuracy of the assessments as the United States lost or refuses to deliver the seized records used to calculate the amount of the assessment," Hammon's testimony met the reasonable denial requirement. *United States v. Hammon*, No. 1:05-CV-2282, 2006 WL 2468357, at *3 (N.D. Ohio Aug. 25, 2006) (unpublished).

Whether Hammon met the standard for a reasonable denial is a question of fact, and the district court did not clearly err in finding that Hammon had succeeded in shifting the burden of proof back to the Government. Although reasonable minds could differ, Hammon's testimony was not vague or conclusory; Hammon's denial was based on his perception of the probable inaccuracy of a calculation of what the Government claimed he had been making as a bookmaker seventeen years earlier. Since the Government had lost all records upon which its assessment was based, it was impractical and inequitable to require Hammon to produce documents or other evidence to prove his negative assertion. Moreover, "[b]ecause of its unique opportunity to judge the demeanor of witnesses, we accord particular deference to the district court's findings based on assessments of

credibility." *Walton*, 909 F.2d at 919 (relying on the district court's finding of fact that the taxpayer

had failed to meet his burden regarding the accuracy of the tax assessments at issue).

The Government further contends that the district court erred in finding that Hammon's

testimony constituted a reasonable denial because, according to the Government, his testimony was

contradicted by (1) admissions in his 2005 plea agreement and (2) the 2005 restitution order. As

stated above, such findings of fact are reviewed for clear error. "A factual finding will only be

clearly erroneous when, although there may be evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed."

*United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005) (quoting *United States v. Navarro-*

*Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). "Where there are two permissible views of the

evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of*

*Bessemer*, 470 U.S. 564, 574, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

The evidence highlighted by the Government is insufficient to merit reversal for clear error.

First, the Government claims that the district court erred in finding that Hammon made a reasonable

denial of accuracy of the Government's tax assessment because Hammon's 2005 plea agreement

directly contradicted his later testimony. His 2005 plea agreement, however, only stipulated that he

willfully attempted to evade and defeat the excise tax due, not that the $2.39 million figure was

accurate. The applicable section of the plea agreement states:

> On September 29, 1995, HAMMON was assessed by the Internal Revenue
> Service approximately $2.39 million in wagering excise taxes as a consequence of
> failing to register his gambling enterprise with the IRS, and failing to obtain the $500
> occupational wagering stamp and failing to pay monthly excise taxes of two percent
> of gross wagers accepted by his illegal gambling business from on or about January

1, 2986 through on or about November 30, 1988.

On July 8, 1996, the IRS filed federal tax liens totaling approximately $2.39 million.

From November 1988 through September 26, 2004, HAMMON, willfully attempted to evade and defeat the payment of a large part of the excise tax due and owing by him to the United States of America for the calendar years 1986 through 1988 in the amount of approximately $2.39 million by transferring title to real estate he owned into the name of a nominee, by attempting to purchase a condominium in such a manner that his name would not be revealed on the public record, by cashing checks at a bar rather than at a bank, and by transacting business in cash rather then [sic] by using bank accounts.

As the district court concluded, this plea agreement included only an admission that Hammon willfully avoided taxes assessed against him, not that the $2.39 million was an accurate figure. *United States v. Hammon*, No. 1:05-CV-2282, 2006 WL 2587534, at *3-4 (N.D. Ohio Sept. 5, 2006) (unpublished). At most, the plea agreement is ambiguous as to whether Hammon admitted that the $2.39 million assessment was accurate. Given the general presumption that "[a]mbiguities in a plea agreement must be construed against the government," the district court did not err in finding that Hammon made a reasonable denial despite his 2005 plea agreement. *Fitch*, 282 F.3d at 367 (quoting *United States v. Randolph*, 230 F.3d 243, 248 (6th Cir. 2000)); *accord United States v. Debreczeny*, 69 F. App'x 702, 708 (6th Cir. 2003) (unpublished) ("The government is held to a higher standard because of its role as the drafter of the plea agreement and because it is seen as possessing the upper hand and expertise in the bargaining process.").

The Government also alleges that the district court clearly erred in finding that Hammon had made a "reasonable denial" because the 2005 restitution order in his criminal case mandated that Hammon "pay the total criminal monetary penalties," including $2.39 million in restitution. However, the restitution order does not clearly state that the $2.39 million penalty was for taxes

owed. Moreover, even if the restitution order were for taxes owed, the sentencing court did not base the figure on anything other than the Government's unlitigated assertion that $2.39 million was the correct amount. Restitution orders in criminal proceedings for tax evasion do not preclude future suits over the accuracy of such assessments. *Hickman v. C.I.R.*, 183 F.3d 535, 538 (6th Cir. 1999) (stating that "although the district court may have based its order of restitution upon a government witness'[s] estimate of the taxes due from [the taxpayer], the order did not purport to be an exact and comprehensive determination of what [the taxpayer] owed the IRS."). Thus, the district court did not clearly err in according less weight to the 2005 restitution order and finding that Hammon made a reasonable denial of the Government's tax assessment.

We, therefore, AFFIRM the district court's denial of summary judgment because the district court did not erroneously accord the burden of proof to the Government.

### C. Judicial Estoppel

The Government argues that the district court erred in finding that Hammon was not judicially estopped from denying the accuracy of the Government's assessments. Judicial estoppel is an equitable doctrine that "is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). Although there is "no set formula for assessing when judicial estoppel should apply," courts consider whether: (1) a party's later position is clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept that party's earlier position; and (3) the party advancing an inconsistent position would gain an unfair advantage if allowed to proceed with the

argument. *In re Commonwealth Institutional Sec.*, 394 F.3d 401, 406 (6th Cir. 2005).

We have noted, however, that judicial estoppel must be "applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218; *see also Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987) (noting that the specific requirements of judicial estoppel "are rather vague and vary from state to state and from circuit to circuit," and that "some circuits and jurisdictions have never recognized the doctrine") (citations and internal quotation marks omitted). To limit the doctrine's application, we have held that judicial estoppel applies only when a party attempts to take "a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Warda v. Comm'r*, 15 F.3d 533, 538 (6th Cir. 1994). Judicial estoppel is therefore generally limited to circumstances where a party asserts a position in litigation that is adopted by the court, gains an advantage through that assertion, and then attempts to assert a clearly opposite position in a later proceeding.

In *Warda*, this Court applied judicial estoppel because Warda first persuaded a state probate court that title to her father's land was rightfully hers, and then in a later federal case attempted to persuade the tax court that title to the same land was vested in her son. *Id.* at 539. We concluded that judicial estoppel was appropriate because Warda had gained an advantage by achieving success with a position that necessarily precluded the truth of her later inconsistent position. *See id*.

In the present case, however, Hammon did not "successfully and unequivocally" assert that the $2.39 million assessment was accurate in the criminal proceeding, nor did his admission of guilt

for tax evasion necessarily preclude him from later disputing the amount of the Government's assessment. The exact dollar amount of tax owed was not an element of the offense that Hammon was charged with in the criminal proceeding, and the language of the plea agreement failed to make clear that Hammon was conceding agreement with the accuracy of the IRS's assessment.

Furthermore, because the Government drafted the plea agreement, it could have made clear that Hammon was stipulating to the numerical accuracy of the tax assessment. It nonetheless failed to do so. The language of the plea agreement states that Hammon pled guilty to avoiding taxes "assessed by the government in the amount of approximately $2.39 million." This language confirms only the *fact* of the Government's assessment, not its *accuracy*.

The Government next argues Hammon should not have been allowed to contest the accuracy of the assessment because he stipulated to a base offense level of 22. For a base offense level of 22 to apply, the offense at issue must have resulted in a tax loss of between $1 and $2.5 million. Hammon's stipulation to the offense level, however, was not necessarily inconsistent with his position that the $2.39 million tax assessment was inaccurate, and his agreement to a range of loss between $1 and $2.5 million hardly evinces an unambiguous intent to concede the accuracy of the Government's assessment. Rather, his agreement simply evinces a settlement of the criminal charges against him based upon offense level 22.

The Government also failed to demonstrate that the sentencing court *accepted* the accuracy of the IRS assessment—the second prong of the judicial estoppel test. Although an admission in a guilty plea might satisfy the judicial acceptance factor of the judicial estoppel test, *see Lowery v. Stovall*, 92 F.3d 219, 224-25 (4th Cir. 1996), the sentencing court in the present case did not address,

much less accept, the accuracy of the IRS's tax assessment. We therefore cannot conclude that the sentencing court "accepted" Hammon's "earlier position."

Finally, it is not clear from the record that Hammon gained any unfair advantage by being allowed to contest the accuracy of the Government's assessment in the civil proceeding. Although the court in the criminal proceeding noted that Hammon had taken responsibility for his crime, the Government has failed to point to any evidence in the record showing that Hammon received any advantage on that basis. The court did not grant Hammon a downward departure for acceptance of responsibility, nor did it suggest that it was giving Hammon any credit because he had conceded that the dollar amount of the assessment was accurate. And there is no question that, in the civil proceeding before us, the Government was allowed to fully litigate the issue of the amount of the assessment and present any and all evidence to the jury as to both the plea agreement and the accuracy of the earlier assessment. The district court therefore did not err in finding that Hammon was not judicially estopped from denying the accuracy of the Government's assessments.

### III. Jury Instructions

Additionally, the Government claims that the district court erred (1) by instructing the jury that the Government bore the burden of proving the accuracy of its assessments, and (2) by failing to instruct the jury that it was required to find that Hammon's liability to the United States was no less than $1 million.

### A. Standard of Review

Disputes regarding jury instructions are questions of law that are reviewed *de novo*. *William ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 365 (6th Cir. 2005). The refusal to give

a requested instruction is reviewed for abuse of discretion. *Id.*

### B. Burden of Proof

The Government's argument that the jury instructions erroneously placed the burden of proof on the Government is essentially the same as its earlier claim that the district court erred in finding the Government bore the burden of proving the accuracy of its assessments. As explained above, the district court did not err in that determination. Therefore, the district court's jury instruction on the burden of proof was not in error.

### C. Liability of At Least $1 Million

As stated above, the district court's failure to give a jury instruction and special interrogatories that the jury was required to find that Hammon's tax liabilities were no less than $1 million is reviewed for abuse of discretion. "A trial court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge 'fails to accurately reflect the law.'" *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001) (quoting *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999)). Indeed, a judgment will only be reversed if "the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* at 622 (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)).

The Government contends that the district court erred by according no preclusive effect to the 2005 plea agreement which resulted in sentencing Hammon based on an assumed tax loss of at least $1 million. In essence, the Government argues that Hammon should have been collaterally estopped from presenting evidence that he owed less than $1 million in taxes. Collateral estoppel is applicable to issues litigated in criminal cases, even if by virtue of a guilty plea. *Gray v. Comm'r*,

708 F.2d 243, 246 (6th Cir. 1983). "The doctrine of collateral estoppel operates when three requirements are met: (1) the issue in the current action and the prior action are identical; (2) the issue was actually litigated; and (3) the issue was necessary and essential to the judgment on the merits." *Beaty*, 245 F.3d at 624.

Here, collateral estoppel is inapplicable because the issue in the criminal action differed from the issue in the current suit. In Hammon's criminal case, the question was whether Hammon avoided taxes due. The accuracy of the IRS's assessments was not necessary and essential to the criminal case.[2] In contrast, the civil case centers on the accuracy of the Government's tax assessment, a question that was neither closely nor clearly evaluated during Hammon's criminal proceedings. The district court's refusal to instruct the jury that they must find Hammon's tax liability to be at least $1 million, therefore, did not inaccurately reflect the law. Moreover, it is not evident that the Government was substantially prejudiced by the refusal to give the requested instruction, as the Government was still allowed to present evidence of Hammon's plea agreement, along with any other evidentiary support for the accuracy of its assessment. The district court thus did not abuse its discretion in refusing to issue the Government's proposed jury instructions on Hammon's minimum liability.

IV. Motion for Judgment as a Matter of Law

---

[2]The 2005 plea agreement stipulated that Hammon would "not request a sentence lower than the advisory Sentencing Guidelines range." The base offense level awarded was 22, which corresponds to a tax loss of more than $1,000,000. U.S.S.G. § 2T4.1. Although this is evidence that Hammon may have owed the Government more than $1,000,000 in unpaid taxes, this issue was not fully litigated, and the plea agreement does not evince a clear intent on the part of Hammon to settle the question of the accuracy of the tax assessment.

The Government also contests the district court's denial of its motion for judgment as a matter of law.

## A. Standard of Review

The denial of a motion for judgment as a matter of law ("JMOL") or a renewed motion for judgment as a matter of law is reviewed *de novo*. *H.C. Smith Invs., L.L.C. v. Outboard Marine Co.*, 377 F.3d 645, 650 (6th Cir. 2004). A JMOL may be granted where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party." Fed. R. Civ. P. 50(a)(1). There is no legally sufficient evidentiary basis for a particular finding if "the facts are sufficiently clear that the law requires a particular result," *Weisgram v. Marley*, 528 U.S. 440, 448, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice & Procedure § 2521, 240 (2d ed. 1995)), or "if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001).

## B. Discussion

The Government contends it is entitled to judgment as a matter of law on Hammon's tax assessment because (1) Hammon failed to present sufficient evidence to constitute a "reasonable denial" of the Government's tax assessments and (2) the district court erred in not finding that Hammon was judicially estopped from denying the accuracy of the Government's tax assessments. Both of the Government's concerns as to the sufficiency of Hammon's denial and the district court's refusal to apply the doctrine of judicial estoppel were discussed above. Because Hammon presented

sufficient evidence under the circumstances to constitute a reasonable denial and the district court did not err in refusing to apply judicial estoppel, the district court did not err in refusing to grant JMOL to the Government after the jury found Hammon liable for taxes in the amount of $450,369.00.

## V.  Statutory Interest

Finally, the Government claims that it is entitled to statutory interest on the jury award pursuant to 26 U.S.C. § 6601.

### A.  Standard of Review

Questions of statutory interpretation are reviewed *de novo*. *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 459 F.3d 676, 680 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1912 (2007). Likewise, the award of interest on a judgment is reviewed *de novo* if that determination is based on statutory interpretation or legal analysis. *Bangert Bros. Constr. Co., Inc. v. Kiewit W. Co.*, 310 F.3d 1278, 1297 (10th Cir. 2002).

### B.  Discussion

Section 6601(a) of the Internal Revenue Code requires that "[i]f any amount of tax imposed [by the Internal Revenue Code] is not paid on or before the last date prescribed for payment, interest on such amount . . . shall be paid for the period from such last date to the date paid." That interest accrues from the date of assessment to the date of payment. *United States v. Sarubin*, 507 F.3d 811, 814-15 (4th Cir. 2007). Because the amount of interest is a matter of law, not of evidence, the Government does not have to assert or prove the amount of interest at trial. *Id.* at 815; *United States v. Schroeder*, 900 F.2d 1144, 1150 n.5 (7th Cir. 1990); *Ghandour v. United States*, 37 Fed. Cl. 121,

124 n.11 (1997).

The jury verdict form read: "We, the Jury . . . find the issues in this case in favor of the plaintiff, the United States of America, and against defendant, David L. Hammon, Sr., and award taxes, penalties and interest to the plaintiff in the amount of: . . . ." The district court determined that because "the jury verdict explicitly contemplated penalties and interest in addition to [Hammon's] tax liability," there was no need to modify the jury award to include interest. However, the district court confused the issue of fact determined by the jury with the issue of law to be determined by the court. The issue of fact was the accuracy and actual amount of Hammon's assessed tax liability, which included the interest from each of the 35 months for which an assessment was made against Hammon. In contrast, the Government is statutorily entitled to a different type of interest, *unassessed* interest, which accrued from the September 29, 1995, assessment date until the assessments are paid. 26 U.S.C. § 6601; *Sarubin*, 507 F.3d at 815 (interest pursuant to § 6601 may be collected in addition to the amount awarded in a common law action to collect taxes owed). Thus, the district court's interpretation of the jury verdict and refusal to award interest was incorrect as a matter of law. We therefore AFFIRM the jury verdict, but we REVERSE as to the award of interest pursuant to 26 U.S.C. § 6601 and REMAND for the entry of judgment to include such interest.