RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0227p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

MICHAEL A. MIRANDO,

*Plaintiff-Appellant,*

No. 13-4207

v.

UNITED STATES DEPARTMENT OF TREASURY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-00233—James S. Gwin, District Judge.

Argued: June 17, 2014

Decided and Filed: September 8, 2014

Before: SILER, GILMAN, and GIBBONS, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Benjamin C. Heidinger, ROBERT J. FEDOR, ESQ., LLC, Westlake, Ohio, for Appellant. Gretchen M. Wolfinger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Benjamin C. Heidinger, Robert J. Fedor, ROBERT J. FEDOR, ESQ., LLC, Westlake, Ohio, for Appellant. Gretchen M. Wolfinger, Bridget M. Rowan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

───────────────

**OPINION**

───────────────

SILER, Circuit Judge. Following his entry of a guilty plea to conspiracy to defraud the United States and for income tax evasion, Michael Mirando filed a tax refund suit, seeking to recover amounts he claims he overpaid to the Internal Revenue Service ("IRS") based on three of

1

the four taxable years for which he was convicted. The district court granted summary judgment in favor of the IRS, finding that Mirando was judicially estopped from bringing his tax refund suit because of his prior guilty plea, and dismissed Mirando's suit without explicitly addressing Mirando's motion to file a surreply, which responded to the issue of judicial estoppel first raised by the government in its reply brief. For the reasons stated below, we **AFFIRM**.

## BACKGROUND

In 2001, Mirando pleaded guilty to two counts of mail fraud, one count of money laundering, and two counts of tax evasion, with the tax evasion charges stemming from his efforts to evade the payment of taxes for the 1995 and 1996 tax years. Following his 2003 release from imprisonment, the IRS assessed additional tax, interest, and penalties for Mirando's taxes due for the 1995 and 1996 tax years, as well as for unpaid tax liabilities for the 2000 and 2004 tax years.

In 2007, Mirando was indicted on one count of conspiracy to defraud the United States and four counts of tax evasion, one for each of the 1995, 1996, 2000, and 2004 tax years. He again pleaded guilty to all charges. In exchange for his plea, the United States agreed, *inter alia*, "not [to] pursue criminal charges against [Mirando's] ex-wife or two children for any offense known to the United States" and to recommend to the district court at sentencing that Mirando receive a three-level reduction for acceptance of responsibility.

In the agreement, Mirando and the United States stipulated that certain facts would have been established beyond a reasonable doubt at trial, including:

> As of June 29, 2007, the total tax liability, including interest and penalties, amounted to $448,776.13.
>
> [] From the time MIRANDO realized that he was under investigation for the matters leading to his 2001 conviction and continuing until the present, MIRANDO took measures to evade the payment of his outstanding tax liability and to hide assets. His many measures included, but are not limited to, arranging a sham divorce from his wife, submitting false statements to the IRS Collection Department and the United States Probation Office regarding his income, assets and living arrangements, among other things, and assisting his college-age children in submitting false financial information in order to receive need-based financial aid.

[] At all times relevant, MIRANDO made all decisions regarding the Mirando family finances and[] contemporaneously took affirmative steps to understate his income and assets to the IRS in order to evade the payment of his tax liability when he indeed has access to the resources to pay the assessed tax debt that is due and owing.

Mirando made three payments of restitution to the IRS prior to entering his guilty plea, totaling $467,686.04, which was reflected in an attachment to the plea agreement. Therefore, Mirando inexplicably paid $18,909.91 more than the amount stated in the plea agreement. He was sentenced to 50 months' imprisonment followed by three years' supervised release.

In 2008, Mirando and his ex-wife filed Amended U.S. Individual Income Tax Returns, claiming refunds for the taxable years 1995, 1996, and 2000 in the amounts of $38,871, $54,112, and $32,332, respectively. The IRS denied all three refund claims. Mirando then filed this tax refund suit, arguing that the IRS erroneously assessed and collected an overpayment of $125,315. The government filed its answer, but failed to assert any affirmative defenses.

Mirando and the government filed cross-motions for summary judgment. In its motion, the government argued that it was entitled to judgment as a matter of law because collateral estoppel barred Mirando from challenging the amount of taxes. In Mirando's response in opposition, he argued that the government waived its collateral estoppel argument because it failed to assert it as an affirmative defense in its answer and, in the alternative, that the government failed to satisfy each element of collateral estoppel. The government then filed a motion for leave to amend its answer to assert collateral estoppel. However, three days later, it conceded in its reply to Mirando's response in opposition that it could not establish collateral estoppel. The government instead argued that judicial estoppel barred Mirando from recovering in his tax refund suit and further argued that it did not waive the affirmative defense of estoppel, but did not specify which type.

In response to the government asserting judicial estoppel for the first time in its reply brief, Mirando moved for leave to file a surreply addressing judicial estoppel. Mirando attached his proposed surreply to his motion, in which he argued that the government waived the affirmative defense of judicial estoppel by failing to plead it in its answer or amended answer and, alternatively, that the government could not establish each element of judicial estoppel.

Without explicitly ruling on Mirando's motion for leave to file a surreply, the district court granted the government's motions to amend its answer and for summary judgment, denied Mirando's motion for summary judgment, and entered judgment terminating the suit. The court did not address the fact that the government raised judicial estoppel for the first time in its reply brief, or that its motion to amend did not seek to add the affirmative defense. The court nonetheless concluded that judicial estoppel prevented Mirando from bringing his tax refund suit because "Mirando's position that he is entitled to a refund for overpaid taxes . . . is directly contrary to his plea agreement in his 2007 criminal case," and because he would gain an unfair advantage if allowed to proceed with his suit.

## DISCUSSION

### I.      Judicial Estoppel

Mirando argues that the district court erred in granting summary judgment to the government because it erroneously determined that he was judicially estopped from contesting the accuracy of the IRS's assessments. We review de novo a district court's grant of summary judgment. *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 388 (6th Cir. 2013). Summary judgment is proper where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). We likewise review a district court's judicial estoppel analysis de novo. *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008).[1]

The doctrine of judicial estoppel prevents a party who successfully assumed one position in a prior legal proceeding from assuming a contrary position in a later proceeding. *New Hampshire*, 532 U.S. at 749. "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency

---

[1]The government implores us to apply abuse-of-discretion review in light of *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks and citation omitted), where the Supreme Court found that judicial estoppel is "an equitable doctrine invoked by the court at its discretion." However, because the Court did not instruct us to review for abuse of discretion, we continue to apply de novo review absent a more definitive statement from the Court. *See Lorillard Tobacco*, 546 F.3d at 757. Furthermore, the standard of review is irrelevant because we are affirming the district court's decision under the least deferential standard of review.

of the moment." *Lorillard Tobacco*, 546 F.3d at 757 (internal quotation marks and citation omitted).

Although the Supreme Court has noted that the "circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," three factors may typically be used to help a court decide whether it applies:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, [we] regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750–51 (internal quotation marks and citations omitted). "[B]ecause the doctrine precludes a contradictory position without examining the truth of either statement," we must apply it "with caution to avoid impinging on the truth-seeking function of the court." *Lorillard Tobacco*, 546 F.3d at 757.

In granting the government's motion for summary judgment, the district court found that Mirando was judicially estopped from bringing his tax refund claim because his "position that he is entitled to a refund for overpaid taxes for the years 1995, 1996, and 2000 is directly contrary to his plea agreement in the 2007 criminal case," wherein he "specifically agreed he owed $448,776.13." The court further found that Mirando would gain an unfair advantage if allowed to proceed with his claim because, by pleading guilty, he "avoided the possibility of a longer sentence and the [government] agreed not to prosecute Mirando's ex-wife or two children."

First, Mirando's position in his tax refund suit is clearly inconsistent with the position he took in his 2007 criminal case. His 2007 plea agreement states in pertinent part:

> The parties . . . agree and stipulate that the following facts would have been established beyond a reasonable doubt at a trial in this matter[:] . . . After MIRANDO's release from the custody of the Bureau of Prisons, the IRS assessed tax, interest, and penalties for MIRANDO's taxes due for the 1995 and 1996 tax years as well as for unpaid tax liabilities for the 2000 and 2004 tax years. As of June 29, 2007, the total tax liability, including interest and penalties, amounted to $448,776.13.

Mirando initialed the page on which this language appeared and signed the entire document.  It is clearly inconsistent for Mirando to stipulate to an exact amount of money owed in his plea agreement and to now argue that the numerical assessment is inaccurate and overstated.

Mirando argues that his case should be treated like *United States v. Hammon*, 277 F. App'x 560, 566 (6th Cir. 2008), where we found that the defendant's later position was not clearly inconsistent with his earlier position because the defendant had not stipulated to the numerical accuracy of the IRS's tax assessment in his plea agreement.  However, *Hammon* is distinguishable.  In *Hammon*, the defendant's "plea agreement state[d] that [the defendant] pled guilty to avoiding taxes 'assessed by the government in the amount of *approximately* $2.39 million.'"  *Id.* (emphasis added).  Therefore, we found that the defendant "did not 'successfully and unequivocally' assert that the $2.39 million assessment was accurate."  *Id.*

In contrast, Mirando's plea agreement unequivocally states that the government would have proven beyond a reasonable doubt at trial that Mirando owed precisely $448,776.13.  There is no approximation—the language that the government drafted explicitly stated that Mirando was stipulating to the numerical accuracy of the assessment, and Mirando agreed to the stipulation by initialing the page and signing and entering the plea agreement.  *Cf. Hammon*, 277 F. App'x at 566 ("[B]ecause the Government drafted the plea agreement, it could have made clear that [the defendant] was stipulating to the numerical accuracy of the tax assessment.  It nonetheless failed to do so.").

Mirando further argues that the plea agreement is ambiguous as to whether he specifically agreed to the accuracy of the IRS's assessment because the attachment to the plea agreement stated a different total tax liability from the plea agreement itself; because the attachment acknowledged that payments were made prior to the entry of the plea agreement, and these payments were not accounted for in the plea agreement; and because the tax years at issue in the refund suit are not identical to the tax years at issue in the plea agreement.  But none of these alleged ambiguities negates the fact that Mirando's current position is clearly inconsistent with his position in the 2007 plea agreement.  The difference in the assessments between the plea agreement and the attachment was $18,909.91, but Mirando is seeking a refund of $125,315—far more than the difference between the documents and an amount that Mirando has not claimed is

related to the difference between the agreement and the attachment. Further, it is irrelevant that Mirando had already made payments toward his tax assessment prior to entering the plea because the agreement states the *total* tax liability that the government would have been able to prove beyond a reasonable doubt at trial. It is likewise irrelevant that the tax years in the refund suit are not identical to the tax years in the plea agreement because Mirando chose the years to dispute, thus creating this so-called ambiguity.

Second, Mirando succeeded in persuading the sentencing court to accept his earlier position in his guilty plea, and judicial acceptance of his position in this refund suit would create the perception that one of these courts was misled. "[A]n admission in a guilty plea might satisfy the judicial acceptance factor of the judicial estoppel test." *Hammon*, 277 F. App'x at 567; *see also Lowery v. Stovall*, 92 F.3d 219, 224–25 (4th Cir. 1996). However, the sentencing court must have accepted the accuracy of the IRS's tax assessment. *See Hammon*, 277 F. App'x at 567.

Because neither party included a transcript of Mirando's sentencing following his 2007 plea, we do not know whether the sentencing court explicitly accepted the accuracy of the IRS's tax assessment. However, we do know that the court accepted Mirando's plea agreement and that the plea agreement included Mirando's stipulation that the government would be able to prove beyond a reasonable doubt that his tax liability was $448,776.13. Therefore, the sentencing court, at least implicitly, accepted Mirando's admission that he owed $448,776.13 and accepted the accuracy of that assessment when the court accepted the plea agreement as a whole. *See Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1218 (6th Cir. 1990) (finding that judicial acceptance includes the situation where "the first court has adopted the position urged by the party[] . . . as part of a final disposition.").

Further, because there is no indication that Mirando's sentencing was not procedurally sound, we must assume that the sentencing court followed the mandates of Federal Rule of Criminal Procedure 11, which require the court to determine whether there is a factual basis for the plea. FED. R. CRIM. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). Additionally, "when a plea agreement's written description of the essential facts underlying the charge supports a finding of guilty, the

defendant's express acknowledgment of the accuracy of the agreement's provisions satisfies the requirements set forth in Rule 11[(b)(3)]." *United States v. Baez*, 87 F.3d 805, 810 (6th Cir. 1996).**2** Therefore, because Mirando expressly acknowledged the accuracy of the provisions of his plea agreement by signing and entering it, Rule 11(b)(3) has been satisfied.

Mirando argues that the district court failed to address the second prong of the judicial estoppel test and therefore failed to make any determination or finding that his previous position was accepted by a court. However, while it did not explicitly delineate each of the three factors, the court stated that "the [sentencing] court accepted [Mirando's] plea agreement," which is only pertinent to the second factor.

Third, Mirando would derive an unfair advantage if not estopped from asserting his tax refund claim because he pleaded guilty and stipulated to the tax assessment in order to ensure that his family would not be prosecuted. Mirando argues that this "putative benefit" did not accrue to him and that nothing in the record suggests that this benefit was the result of his agreement to the accuracy of the tax assessment. Yet Mirando has admitted on appeal, albeit inadvertently, that it did benefit him to include this provision of the plea agreement:

> Fearing that his two children or ex-wife would be criminally prosecuted, [Mirando] entered into a plea agreement with the United States and [pleaded] guilty to all five counts in the indictment on August 21, 2007.

Forgoing prosecution of Mirando's family was not a benefit to the government, but in fact was a detriment. Therefore, the provision must be a benefit to Mirando; otherwise, it would not have been included in the agreement and would not have been his admitted motivation for entering it.

As to the district court's conclusion that Mirando avoided the possibility of a longer sentence by specifically agreeing to his tax liability, we cannot agree that Mirando received an unfair advantage on this basis because neither party provided a sentencing transcript for our consideration. Consequently, although it is true that the government agreed to advise the

---

**2***Baez* refers to Rule 11(f); however, Rule 11(b)(3) was formerly Rule 11(f), so the quotation has been altered to reflect the change. *See Spiridigliozzi v. United States*, 117 F. App'x 385, 390 (6th Cir. 2004) (noting that Rule 11(b)(3) was formerly Rule 11(f)).

sentencing court that it believed Mirando should receive a three-level credit for acceptance of responsibility, we have no evidence that the sentencing court granted the credit.

Therefore, the district court did not err in granting the government's motion for summary judgment because Mirando is barred as a matter of law from pursuing his tax refund suit under the doctrine of judicial estoppel. If we were to allow Mirando to pursue his tax refund suit, we would allow him to manipulate the judicial process "to suit an exigency of the moment," *Lorillard Tobacco*, 546 F.3d at 757 (citation omitted); namely, we would allow him to essentially renege on his bargained-for plea agreement. Consequently, we apply judicial estoppel in the interest of equity so as to prevent such "cynical gamesmanship." *Id.* (citation omitted).

## II.     Motion for Leave to File a Surreply

Mirando argues that the district court abused its discretion and infringed upon his rights under the Federal Rules of Civil Procedure by failing to grant his request for leave to file a surreply after the government raised judicial estoppel for the first time in its reply brief.

"When new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated, a problem arises with respect to Federal Rule of Civil Procedure 56(c)." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). "The purpose of Rule 56(c) is to afford the nonmoving party notice and a reasonable opportunity to respond to the moving party's summary judgment motion and supporting evidence." *Id.* Therefore, "notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment." *Id.* In such a situation, the district court should allow the nonmoving party an opportunity to respond, particularly where the court's decision relies on new evidentiary submissions. *Id.* at 481–82.

However, we review a district court's denial of a surreply under the deferential abuse-of-discretion standard. *Seay*, 339 F.3d at 480; *see also Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010). A district court abuses its discretion when, for example, it relies

on clearly erroneous findings of fact or improperly applies governing law. *See, e.g.*, *Beacon Journal Publ'g Co., Inc. v. Blackwell*, 389 F.3d 683, 684–85 (6th Cir. 2004).

Although the district court found that judicial estoppel, the argument first raised by the government in its reply brief, was dispositive, the court did not abuse its discretion in granting the government's motion for summary judgment without explicitly granting or denying Mirando's motion for leave to file a surreply because it did not rely on new evidentiary submissions. Instead, it applied the appropriate legal analysis to well-settled and undisputed factual findings. The government's judicial estoppel argument raised in its reply brief did not include any new evidence—it relied solely on undisputed facts. Therefore, the district court relied on the information embodied in Mirando's guilty plea, which was before the court long before the reply brief, and applied the appropriate test for judicial estoppel to those well-settled facts to reach its conclusion. *See Seay*, 339 F.3d at 481–82 (finding that a district court must allow a nonmoving party an opportunity to respond, "particularly [] when the district court relies on [] new evidentiary submissions").

Mirando relies on *Seay* and *Engineering & Manufacturing Services*. However, both of those cases are distinguishable because they involved the presentation of new evidence by the moving parties in their reply briefs, not simply new arguments based on existing and undisputed evidence. *Seay*, 339 F.3d at 482 ("We therefore hold that the district court abused its discretion in granting summary judgment so quickly without allowing Plaintiff an adequate opportunity to respond to the new evidence."); *Eng'g & Mfg. Servs.*, 387 F. App'x at 583 (finding that defendants' presentation of new arguments and new evidence in their reply brief violated plaintiff's rights). Furthermore, both of those cases contained explicit rulings on the issue by the district court, whereas here we do not know from the record whether the district court considered Mirando's surreply. *Seay*, 339 F.3d at 480 (noting that the district court denied the plaintiff's motion to strike evidentiary submissions submitted in the defendants' reply brief); *Eng'g & Mfg. Servs.*, 387 F. App'x at 580 (noting that the district court denied plaintiff's motion for leave to respond to defendants' reply brief).[3]

---

[3]Mirando also points us to *Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010), a case that he claims is identical to his, wherein the Third Circuit found that the non-moving party was deprived of a meaningful

Furthermore, even if the court abused its discretion, any error was harmless because Mirando's proposed surreply did not offer any meaningful analysis on judicial estoppel and because Mirando has failed to establish that the court did not consider his proposed surreply. The substance of Mirando's judicial estoppel argument in his surreply is that the government's motion should be denied because "it cannot be said that [Mirando] was successful in the prior litigation." Mirando did not address the remaining two prongs of judicial estoppel, nor did he expound upon his analysis of the first prong.

As such, we cannot say that Mirando was denied a meaningful opportunity to present his judicial estoppel argument. His proposed surreply dedicated only one paragraph to the substance of his argument against application of judicial estoppel, summarily stated that the first prong was not met, and wholly failed to address the remaining two prongs. This opportunity to respond, had the district court explicitly granted it, would not have been very meaningful.

Moreover, the record is unclear as to whether the district court did or did not consider Mirando's surreply, so we cannot say definitively that it did not take into account the arguments advanced therein. The court did not explicitly grant or deny Mirando's motion for leave to file a surreply, and Mirando has failed to prove that it was not in fact considered. Further, Mirando's proposed surreply was before the court as an attachment to his motion and, as discussed, the court did not have much to reference if it did indeed consider the surreply in its order.

**AFFIRMED**.

---

opportunity to present arguments or evidence in a surreply and that it was fundamentally unfair because the moving party's argument first raised in the reply was found to be dispositive by the court. However, *Alston* is not precedential authority because it is an unpublished case from a different circuit. Furthermore, the appellant in *Alston* never moved the district court for leave to file a surreply, so the Third Circuit found that, "[t]o the extent [the appellant] wishes to present arguments and evidence in opposition," he should have been allowed to do so. *Id*. Here, however, Mirando attached his proposed surreply, and we do not know from the record whether the district court considered his arguments therein.